LEWIS W. KEITH & another *vs.* MARY M. THOMAS.

Suffolk.   December 6, 1928. — March 26, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction*, Reformation of contract. *Guaranty*. *Contract*, Reformation, Construction, In writing. *Agency*, Existence of relation, Ratification. *Equity Pleading and Practice*, Findings by judge, Appeal.

A creditor of a corporation refused to extend further credit unless a guaranty was furnished, whereupon an officer of the corporation procured from his mother, who knew of the indebtedness and request for a guaranty, a writing addressed to the creditor wherein she guaranteed "all accounts for purchase of . . . [goods] from your concern made by . . . [her son]." All dealings relative to the guaranty were had between the creditor and the son; there was no communication between the creditor and the mother at any time, and the son did not communicate to her a statement by the creditor to him that the guaranty was to cover not only the previous but also subsequent purchases of goods. The creditor accepted the guaranty and thereafter extended further credit to the corporation, no purchases of goods being made by the son except on its behalf. The creditor received payment of the amount that was due him at the time of the execution of the guaranty, but the corporation failed to make payment for the subsequent purchases. Both the mother and the creditor were honestly mistaken as to the effect of the guaranty and both intended that it should apply to the account of the corporation. In a suit in equity by the creditor against the mother, wherein the plaintiff sought to have the guaranty reformed by having the name of the corporation inserted therein in place of the son's name, and sought damages thereunder in the amount of the unpaid balance due him, the trial judge ruled that the plaintiff was entitled to reformation, but that he could not recover such damages, and a final decree was entered dismissing the bill. *Held*, that

(1) Since the guaranty did not correctly express the mutual un-

derstanding and intent of the parties, it was proper to grant the prayer for reformation;

(2) The guaranty should not be construed most strongly against the defendant;

(3) Findings were not warranted that the son was the agent of the defendant so that she would be bound by any understanding between him and the plaintiff as to the scope of the guaranty; or that the defendant ratified any acts of the son;

(4) The language of the guaranty was ambiguous, and the circumstances surrounding its execution therefore might be considered in its construction;

(5) So construed, the guaranty was not a continuing one, but was limited to the indebtedness of the corporation existing at the time of its execution;

(6) That indebtedness having been paid, the decree dismissing the bill was proper.

No error is shown in the admission of certain evidence by a judge hearing a suit in equity, if the judge thereafter states in his findings that he entirely disregarded such evidence.

CONTRACT upon a guaranty in writing. Writ dated July 11, 1923.

In the Superior Court the action, upon a motion by the plaintiffs, was amended into a suit in equity seeking reformation of the guaranty and the assessment of the plaintiffs' damages. The suit was heard by *Greenhalge,* J., a stenographer having been appointed to take the evidence under G. L. c. 214, § 24; Equity Rule 29 (1926). The guaranty and material facts found by the judge are stated in the opinion. Certain of the rulings requested by the plaintiffs and refused by the judge were as follows:

"5. The writing signed by the defendant February 8, 1922, imposed upon the defendant the liability for leather purchased after, as well as before, that date.

"6. The writing dated February 8, 1922, whether reformed or not, constitutes in and of itself as a matter of law a continuing guaranty.

"7. The writing dated February 8, 1922, whether reformed or not, and construed in the light of the evidence in relation to the other circumstances of the case, constitutes a continuing guaranty."

"11. Having made Claude B. Thomas her agent for the purpose of negotiating and completing the contract of

guaranty into which the defendant entered with the plaintiffs she was bound by his acts in respect thereto and by his knowledge of the plaintiffs' acceptance of the guaranty as if she had been individually present at any conferences in respect thereto."

"13. Under the circumstances of this case, Claude B. Thomas was the agent of the defendant for the purpose of negotiating and carrying to completion the contract of guaranty."

By order of the judge, a final decree was entered dismissing the bill, and the plaintiffs appealed.

*S. H. Batchelder,* for the plaintiffs.

*E. F. McClennen,* for the defendant.

CROSBY, J.   This bill in equity for the reformation of a written contract of guaranty, and to recover damages resulting from its alleged breach, is before this court on the plaintiffs' exceptions to the "memorandum of findings, rulings and order for decree" made by the trial judge and their appeal therefrom, and on appeal from the final decree dismissing the bill.   The suit was originally brought at law and afterwards was amended into a bill in equity upon motion of the plaintiffs.

The defendant executed a written instrument which reads as follows: "February 8, 1922.   Keith & Floyd   Dear Sirs: I hereby guarantee all accounts for purchase of leather from your concern made by Mr. Claude B. Thomas.   Very truly yours, Mary M. Thomas."   It appears from the record that Claude B. Thomas was the defendant's son, and that he was the president, treasurer and a stockholder in the C. B. Thomas Company, a corporation which, on the date of the above instrument, was indebted to the plaintiffs, a partnership, to the extent of about $6,000 for leather purchased.   The plaintiffs had refused to extend any further credit to the corporation unless a substantial guaranty was furnished, whereupon Claude B. Thomas procured from his mother the guaranty above set forth which was accepted by the plaintiffs as satisfactory.   There was no communication between the plaintiffs and the defendant either before or at the time of the execution of this instrument; it was mailed to the plaintiffs

by Claude B. Thomas, and all negotiations respecting the guaranty occurred between the plaintiffs and the defendant's son.   After the receipt of the guaranty by the plaintiffs they extended credit to the C. B. Thomas Company far in excess of the amount due them at that time, until June, 1923, when the corporation failed to meet its obligations.   It then owed the plaintiffs $27,224.05.   After an assignment for the benefit of creditors, the plaintiffs received a dividend of $7,032.95, which reduced the indebtedness of the corporation to the plaintiffs by that amount.   The plaintiffs by a prayer in the bill sought to have the contract of guaranty reformed by inserting the words "for the C. B. Thomas Company" immediately after the phrase "Mr. Claude B. Thomas," and prayed that the instrument as so reformed be enforced against the defendant by awarding damages to the amount of the unpaid balance with interest.

The trial judge found that "Both the plaintiffs and the defendant at the time of the execution and delivery of the guaranty intended and believed that the instrument was to apply to the account of the C. B. Thomas Company, and Thomas thereafter never made or proposed to make any purchases of leather except on behalf of the company.   There was no evidence that Thomas communicated to the defendant the statement of the plaintiffs that the guaranty was to cover not only past but subsequent purchases of leather, and the plaintiffs never had any direct communication with the defendant either before or after the execution of the guaranty until June, 1923, and never gave her any notice of its acceptance by them . . . that both the plaintiffs and the defendant were honestly mistaken as to the effect of the guaranty and that the defendant intended to execute and deliver and the plaintiffs intended to accept a guaranty of purchases made by Claude B. Thomas for the C. B. Thomas Company"; and he ruled that the plaintiffs were "entitled to reformation as prayed for."

As the bill seeks to recover the full amount of the unpaid balance of the account with interest, the judge ruled that the language of the guaranty was not clear and required a construction as to its meaning; "that it is proper to consider

what facts were known to the parties with reference to which the guaranty was given." He found that the defendant knew the company was indebted to the plaintiffs in the sum of $6,000, and that no purchases of leather could be made without a guaranty of some kind; and stated, "but upon all the evidence, and in the absence of words which plainly import future purchases to an unlimited extent, it seems to me that the circumstances were such as to be at least as consistent with a guaranty of an existing indebtedness only as with a purpose to establish a general line of credit to an unlimited extent, and for an indefinite period." He accordingly ruled that the instrument signed by the defendant was not a continuing guaranty but was limited to the indebtedness of the C. B. Thomas Company existing before February 8, 1922. In his findings and rulings he concludes: "As it was conceded at the trial that such indebtedness had been fully discharged prior to the default in payment by the company in June, 1923, the plaintiffs, upon this construction of the guaranty, are not entitled to recover, even if the instrument should be reformed in accordance with the prayer of the bill." A decree was ordered dismissing the bill with costs.

It is plain that it was the intention of the parties that the guaranty was intended to apply to the indebtedness of the corporation to the plaintiffs. It was the corporation and not Claude B. Thomas from whom the debt was due. Thomas individually owed no debt to the plaintiffs. Whatever debt was due them was incurred by the corporation. The guaranty did not express the mutual understanding and intention of the parties and did not express the agreement which the parties thought they had made. The finding of the judge, that the parties were honestly mistaken as to the legal effect of the guaranty, which was intended by both parties to be a guaranty of the indebtedness due from the corporation to the plaintiffs, was warranted. As originally drawn the instrument was valueless in the hands of the plaintiffs: Claude B. Thomas had no account with them and had purchased no goods from them individually. In these circumstances it was proper to grant the prayer for reformation upon the ground that there was a mutual mistake as to

the legal effect of the language used. *Canedy* v. *Marcy*, 13 Gray, 373, 376. *J. P. Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212, 217–219. *Winston* v. *Pittsfield*, 221 Mass. 356, 358, 361. *Martin* v. *Jablonski*, 253 Mass. 451. *Crowley* v. *Holdsworth*, 264 Mass. 303, 308.

The ruling that there was no evidence that Thomas informed the defendant of the statement made by the plaintiffs that the guaranty was to cover not only past but future purchases of leather, and that the plaintiffs never had any direct communication with the defendant before June, 1923, and never gave her any notice of its acceptance by them, was not error. An examination of the entire record supports this ruling. The judge stated in his findings and rulings that "If, as I understand the rule, in cases of this kind, the language of the instrument is not to be construed most strongly against the party who uses it, I rule that the guaranty is not a continuing guaranty and that it applies to the indebtedness of the C. B. Thomas Company existing prior to February 8, 1922." The same rule is stated in *Courtis* v. *Dennis*, 7 Met. 510, at pages 516, 517: " . . . in letters of guaranty, which are commercial instruments executory in their character, and where the liability of the makers depends upon the acts or misconduct of third persons, the better opinion, we think, is, that in their construction the language used shall be taken according to its ordinary acceptation and common meaning, without any special leaning against the maker of the instrument . . . ." See also *Mussey* v. *Rayner*, 22 Pick. 223, 228; *Bascom* v. *Smith*, 164 Mass. 61, 76; *L. Littlejohn & Co. Inc.* v. *Handy*, 246 Mass. 370, 374. There was no error in the ruling that the contract of guaranty is not to be construed most strongly against the defendant.

The evidence offered by the defendant and admitted subject to the plaintiffs' exception, that she intended to secure only the indebtedness of the company existing on February 8, 1922, shows no error. The judge stated that he entirely disregarded this evidence. There was no evidence which would warrant a finding that the defendant's son acted as her agent, or that she would be bound by any understanding reached between him and the plaintiffs as to the scope of the guaranty;

nor was there any evidence that she ratified any acts of her son. She would not be bound by such acts until she had notice of them and understandingly and unequivocally adopted them. *Culver* v. *Ashley*, 19 Pick. 300, 302. *Greenfield Bank* v. *Crafts*, 4 Allen, 447, 454. *Hamilton* v. *Coster*, 249 Mass. 391, 395. As there was no evidence that the defendant's son acted as her agent the plaintiffs' eleventh and thirteenth requests were rightly refused. Ordinarily where a contract is reduced to writing and is expressed in unambiguous words, its meaning is to be gathered from the terms of the contract, and its construction is as matter of law for the court. *Creighton* v. *Elwell*, 243 Mass. 580. But when the language is doubtful or ambiguous, evidence may be admitted of the circumstances attending the execution of the contract in order that the true intent of the parties may be ascertained in the light of the facts as they then existed. *Sullivan* v. *Arcand*, 165 Mass. 364, 366. The case last cited, which held that the guaranty was a continuing one, is plainly distinguishable from the present case.

We are of opinion that by its terms the contract was limited to the indebtedness due the plaintiffs at the time it was given, and did not include purchases thereafter made by the corporation. The cases cited by the plaintiffs are distinguishable from the case at bar. It follows that the plaintiffs' fifth, sixth and seventh requests were rightly refused.

The exceptions to the refusal to give the other requests have been examined, they need not be considered in detail. It is sufficient to say that no error of law appears by reason of such refusal. Many of the requests were inapplicable in view of the ruling that the guaranty was limited to the indebtedness existing at the time it was executed.

*Decree affirmed with costs.*