VICTORIA P. WRIGHT *vs.* COMMONWEALTH.

Berkshire.   January 6, 1967. — February 3, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Eminent Domain,* Settlement of damages. *Release. Practice, Civil,* Amendment, Land damage proceeding, Waiver, Interrogatories, Proceeding against Commonwealth. *Law or Fact. Contract,* Construction. *Evidence,* Competency, Compromise offer.

In a proceeding for assessment of damages for a taking by eminent domain, G. L. c. 79, § 22, did not preclude the allowance, long after the expiration of the thirty days mentioned therein, of an amendment of the answer setting up a defence not relating to the amount of damages. [671]

Proceeding to trial of a proceeding constituted a waiver of a formal removal of a previous default of the opposing party for failure to answer interrogatories, but did not constitute a waiver of the right to receive a copy of a certain document called for by one of the interrogatories. [671–672]

The Commonwealth is required to answer interrogatories propounded to it in a proceeding under G. L. c. 79 for assessment of damages for a taking by eminent domain. [672]

The effect of a writing signed by the petitioner in a proceeding for assessment of damages for a taking by eminent domain and asserted by the respondent to have released the respondent was a question of law for the court. [672]

A certain writing, drawn by representatives of the respondent in a proceeding for assessment of damages for a taking by eminent domain, addressed to a defunct corporation in care of the petitioner, and signed by the petitioner and returned to the respondent, was construed by this court as being merely an offer to the respondent for settlement of the claim for land damages, and, in the absence of any notification to the petitioner of acceptance thereof or of any payment or tender of payment by the respondent, the writing did not constitute a release of the respondent as alleged in its answer and was inadmissible in the proceeding.  [672–673]

PETITION filed in the Superior Court on January 30, 1959.

The case was tried before *Noonan, J.*

*F. Richard Drennan* for the petitioner.

*Robert L. Meade,* Special Assistant Attorney General (*Thomas H. Heaton, III,* Legal Assistant to the Attorney General, with him), for the Commonwealth.

WILKINS, C.J.   Trial of this petition under G. L. c. 79 for assessment of damages in the taking of land in Savoy had the unusual result of a verdict for the Commonwealth.   The petitioner's exceptions are to the admission in evidence of a so called "Land Damage Agreement," to the denial of her motion to strike that agreement from evidence, and to the allowance of the Commonwealth's motion to amend its answer during trial.

The petition was filed on January 30, 1959, and the answer on April 24, 1959.   On June 2, 1959, the petitioner filed interrogatories to the respondent.[1]   Interrogatory 11 was, "If it is claimed that Victoria P. Wright signed any instrument in connection with said taking either in the nature of an offer or in the nature of a release or compromise please say so and attach to your answers a copy or copies of said instrument or instruments."   On September 11, 1959, upon the petitioner's application a conditional default was entered against the respondent for failure to answer the interrogatories.   Rule 36 of the Superior Court (1954). The default has never been expressly removed.

The taking was of six parcels aggregating 2.05 acres from

---

[1] Previously on May 13, 1959, the respondent had filed interrogatories to the petitioner which were answered on May 28, 1959.

a tract of 101 acres, which Charles H. Wright had conveyed to Savoy Sand Company, a Massachusetts corporation, by deed dated November 5, 1913, and recorded on November 20, 1913. Wright, the petitioner's father-in-law, who died in 1935, was a stockholder, director, officer, and counsel of the sand company. The petitioner, however, never held any interest or position in that company, which was dissolved effective March 31, 1933. At Wright's death his shares passed to the petitioner's husband. On October 9, 1937, the petitioner became the owner of the tract at a tax sale, and received from the town tax collector a deed which was duly recorded on October 28, 1937. On January 15, 1960, she filed in the Land Court a petition to foreclose any rights of redemption against any persons interested in Savoy Sand Company, or their heirs, devisees, or legal representatives. A final decree of foreclosure was entered on April 26, 1960. Up to the trial of the present case on May 5, 1965, the petitioner was in possession under the deed, paid taxes, made frequent use of the tract, and cut from it 39,000 board feet of timber, which she sold in 1955.

On May 14, 1958, the respondent recorded the order of taking, which was made on April 29, 1958, and which named the sand company as owner. The purpose of the taking was to eliminate a curve and to widen portions of a road. The only notice received by the petitioner was in a communication the respondent mailed in May, 1958, addressed "Savoy Sand Company, c/o Mrs. Victoria Wright, 71 Circle Drive, Plandome Manor, Manhasset, New York." This she opened and observed an award of $1 for each of the six parcels, but did nothing further. On July 1, 1958, she received a second communication from the respondent addressed like the first. This contained the first sheet of exhibit 22, at the time unsigned and undated, and three maps of certain Savoy takings, including those concerned in this case. No copy of the first sheet was enclosed. On July 10, 1958, the petitioner dated and signed the first sheet of exhibit 22, and mailed it to the respondent, but retained the maps. Upon receipt, the respondent, through the De-

partment of Public Works (the department), passed the vote shown on the second page of exhibit 22. There was no evidence that any notice of acceptance of the offer contained in exhibit 22 was sent at any time by the respondent.

The petitioner testified that she first became aware of the takings and their location when she visited the real estate in August, 1958. She then discovered that the road, which was in construction, went through a valuable mineral deposit on her land, and consulted counsel.

The petitioner has neither received any money from, nor been tendered any money by, the respondent. Her own testimony was that her damages were $10,000. That of her expert was that they were $7,750 and that of the respondent's expert that they were $300.

The petitioner testified that she was puzzled when she saw "Savoy Sand Company" on the first sheet, but relied upon the assumed fact that the respondent knew what it was doing. She examined the maps before signing.

In order to understand fully the exceptions relating to exhibit 22, it is necessary to set it forth at some length. It is on a printed form of the Department of Public Works, Right of Way Division, and is entitled "Land Damage Agreement Standard Form." The names of the town and county are typed in. The project is given as "Route 116 Recons.," the name of the owner as "Savoy Sand Company," its mailing address as "Mrs. Victoria Wright, 71 Circle Drive, Plandome Manor, Manhasset, New York"; the "layout" as "4673," and the "parcel" as "6, 7, 8, 9, 11 & 13."

There follow two printed paragraphs:

"This agreement is entered into for full settlement of any and all claims for damages incurred or to be incurred by the Department of Public Works as a result of a taking by eminent domain, construction and/or alteration of the subject project by the Department of Public Works. The land/or rights in land taken and limitations of access, if any, are described in an order of taking (together with any related plans) adopted by the Department of Public Works

and on file at the office of said Department and recorded in the Registry of Deeds for the above county.

"The owner agrees to accept the sum of $150.00 [figures in type], plus an apportionment of real estate taxes from the date of the recording of the order of taking to the end of the calendar year of the taking, in full settlement of any and all claims whatever to the taken or remaining property of the owner on the subject project whether caused by the taking of land and/or rights in land, limitations of access, changes in grade or drainage and/or alteration of said project; and agrees to give to the Commonwealth of Massachusetts, through its Department of Public Works, such releases as will release the claims, due to said taking, construction and/or alteration, of any and all persons or concerns having ownership or any interest or title in the premises."

The final printed paragraph is, "It is understood and agreed that this agreement shall become binding only when signed by the owner and other parties in interest, and formally approved by the Commissioners of Public Works."

At the bottom of the page certain printed topics are filled in in ink by the department: Damages $150.00   Taxes $0.90   Total $150.90.   Thereafter beside the topics "Signature of owner   Date   Assented to by mortgagee" the respective blanks in the petitioner's handwriting are: "Victoria P. Wright   July 10, 1958   No mtg."   Below is "Approved by Right of Way Engineer" followed by the signature of one Ellis.

The second page is in typewriting:

"July 29, 1958 Voted, That the offer of Savoy Sand Company, c/o Mrs. Victoria Wright, dated July 10, 1958, to settle for $150.00 (plus $0.90 tax allowance) their claim for damages resulting from the laying out and construction of a State highway in the town of Savoy (Layout No. 4673, dated April 29, 1958 — Parcels Nos. 6, 7, 8, 9, 11 & 13) be accepted, and an award be made accordingly."

This is followed by a stamp attesting that it is a true copy by "Edward F. Doyle, Secretary, Public Works Commission Department of Public Works."

When the exhibit was admitted, the judge did not wish the petitioner to state the grounds of her exception. The motion to strike from the evidence was in writing and gave as the reason that the exhibit "on its face is an offer of compromise only, which is allegedly accepted by the Commonwealth and under which there has been in fact no payment to the petitioner, [that it] in no way affects the petitioner's cause of action, and while the same remains in evidence is prejudicial to her case."

Before considering any exception relating to exhibit 22 we must state the facts concerning the amendment to the answer, which was allowed following the marking of that exhibit. The original answer was a general denial and a denial that the petitioner is entitled to compensation for the taking. On May 5, 1965, the amended answer added another paragraph alleging that the "plaintiff" entered into an agreement with the Commonwealth releasing and discharging the Commonwealth from the cause of action "declared in the petition," and that the offer was duly accepted by the Commonwealth thus releasing and discharging the Commonwealth. The allowance of the amendment was within the judge's discretion, G. L. c. 231, §§ 51, 145, and was not barred by G. L. c. 79, § 22, quoted below.

General Laws c. 79, § 22,[1] provided, so far as material: "Any defence to the petition not relating to the amount of damages must be pleaded within thirty days after the return day of the subpoena; but no answer relating solely to the amount of damages shall be filed by any party and no person shall be defaulted for failure to enter an appearance. . . . Interrogatories may be filed with the same effect as in actions at law."

As hitherto noted, no order expressly removed the default. The hearing began without an exception by the petitioner on this ground. This must be taken to be a waiver of the failure formally to remove the default. It was not, however, a waiver of the right to receive in answer to inter-

---

[1] An amendment by St. 1964, c. 548, § 1, is immaterial.

rogatory 11 a copy of the document which became exhibit 22 and the principal defence of the respondent. The Commonwealth is not exempt from the obligation to answer interrogatories. It cannot be soundly argued that there has been no consent to be sued, because c. 79 provides the procedure for the assessment of damages for taking real estate. This applies to the Commonwealth. See, for example, §§ 2, 12. Cases like *Putnam Furniture Bldg. Inc.* v. *Commonwealth,* 323 Mass. 179, 185, have no present application. It is expressly provided in § 22, which also refers to the Commonwealth, that the filing of interrogatories shall be with the same effect as in actions at law. The Commonwealth while exercising the right to interrogate in the present case seeks to turn § 22 into an instrument of injustice to the petitioner by denying that the Commonwealth is subject to the reciprocal duty to file answers. In so doing it tries to take cover in the doctrine that legislation enacted for the regulation of the rights and liabilities of corporations applies only to private corporations, and public or municipal corporations are not included. See, for example, *Linehan* v. *Cambridge,* 109 Mass. 212; *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 329 Mass. 243, 250. This is not a binding analogy. We are unwilling to believe that the Legislature intended the one-sided inequitable result advocated by the Commonwealth.

To the extent that exhibit 22 may have been inadmissible because of the limited allegations of the original answer this has been cured by the amendment of the answer. There is, however, another objection to admissibility. The effect of the writing is a question of law for the court. *Ingalls* v. *Green,* 337 Mass. 444, 447. *Charles L. Hazelton & Son, Inc.* v. *Teel,* 349 Mass. 617, 621. In the circumstances in which it came to the petitioner's notice, the document, or more precisely its first page, which is all she saw before it was admitted in evidence at the trial, was highly ambiguous. It was addressed to a defunct corporation. The petitioner's name was nothing but a "mailing address." The Commonwealth in its brief has argued that that page then

constituted an offer by it. The petitioner, on the other hand, has contended that it then was at most an invitation to negotiate. Page one, which was drawn by the department, is subject to the principle that a writing is construed against the author of the doubtful language. *New York Cent. R.R.* v. *Stoneman,* 233 Mass. 258, 262. *Koshland* v. *Columbia Ins. Co.* 237 Mass. 467, 472. *Bowser* v. *Chalifour,* 334 Mass. 348, 352. We are inclined to the petitioner's interpretation.

Subsequent to her offer she never received or even had temporary possession of a copy of the second page. She was never notified in any way of its contents or of the vote. Had she been allowed to examine it, all she would have observed was that there had been a vote by the department purporting to accept an offer of the sand company. No money was paid or tendered, and there was nothing in exhibit 22 which sustained the allegation of the amended answer that she released and discharged the Commonwealth from damages for the taking.

Viewed merely as an offer by the petitioner to settle all claims, exhibit 22 was not admissible. *Ashton Valve Co.* v. *Jean,* 273 Mass. 360, 362.

It was error to admit exhibit 22. It was likewise error not to strike it from evidence.

*Exceptions sustained.*