GIL-BERN CONSTRUCTION CORP. *vs*. CITY OF MEDFORD.

Middlesex.    April 7, 1970. — June 11, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Contract*, Building contract.  *Law or Fact*.

The effect of a contractor's written contract with a city on the contractor's
    right to remove excavated material from a construction site was a
    question of law for the court.  [623]
Under a site preparation contract with a city providing that "No ex-
    cavated material shall be removed from the site without approval of
    the Architect.  Surplus excavated material suitable for fill shall be
    stockpiled as directed by the Architect, to a maximum of 10,000 cubic
    yards over proposed tennis courts," the contractor was not entitled to
    remove without the architect's approval excavated material in excess
    of 10,000 cubic yards.  [623]

BILL IN EQUITY filed in the Superior Court on April 2, 1968.

The suit was heard by *Beaudreau*, J., on a master's report.

*James B. Muldoon* for the plaintiff.

*Mark E. Gallagher*, City Solicitor (*Robert J. Blumsack*, Assistant City Solicitor, with him), for the defendant.

REARDON, J.   The case is here on appeals by the plaintiff from an interlocutory decree and a final decree.   The interlocutory decree denied the defendant's motion to recommit a master's report, and the plaintiff's motions to strike the defendant's exceptions to the report, to confirm it, and for entry of a final decree.   It modified the master's report and,

as so modified, confirmed it. The final decree reflected confirmation of the master's report as modified.

On May 24, 1967, the defendant entered into a written contract with the plaintiff. The contract called for certain site preparation to be undertaken by the contractor at the location of a new high school to be subsequently erected by other parties. Work under the contract was to consist of certain topographical changes to conform to subgrades specified in contract plans. For this work the plaintiff was to receive the sum of $99,000 in addition to "a stated unit price for rock blasting, excavation and removal from the job site of materials." Section 2.12 of the site plan contract provisions as executed by the parties read that the plaintiff was required to "[r]emove from the site, and dispose of, all debris and all excavated materials not suitable or needed. . . . No excavated material shall be removed from the site without approval of the Architect. Surplus excavated material suitable for fill shall be stockpiled as directed by the Architect, to a maximum of 10,000 cubic yards over proposed tennis courts." The plaintiff completed its work in satisfactory fashion by November 6, 1967, and in the process accumulated quantities of rock and blasted material in various job sites under the supervision of the architect. These accumulations produced 65,008 cubic yards of material in excess of the 10,000 yards the plaintiff under the contract was required to accumulate over the proposed tennis court area. The plaintiff brought this suit for a declaratory decree pursuant to G. L. c. 231A, claiming title to the excess material excavated and alleging damage due to arbitrary and capricious conduct on the part of the defendant and all acting for it and in its behalf.

On several occasions during the performance of the contract the plaintiff sought permission from the architect to remove stockpiled material from the site. Upon one such request the architect addressed the plaintiff in writing on August 7, 1967, stating in substance that substantial filling operations remained to be completed, that the rock excavated was "excellent for this purpose," that when all

filling was completed a surplus might remain, that "the Owner's option to either place this surplus material or order it trucked off-site will be exercised at a later and more appropriate time," and that the verbal request of the plaintiff to be allowed to truck rock excavation off-site was premature and therefore denied. He further stated, "No removal of material may be initiated without written authorization from this office." [1]

The master found that the excess 65,008 cubic yards were denied to the plaintiff by a decision of the city manager and not the architect, and that this material was surplus to the needs for material by the plaintiff in the performance of its undertaking. Accordingly, the master allowed recovery to the plaintiff for the fair market value of this material plus its profit in removing it from the job site. He further found the material to have been employed by another contractor in a separate contract with the city on later construction at the site. The effect of the interlocutory decree was to strike from the master's report a reference to the 65,008 yards as being "surplus to the performance of . . . [the plaintiff's] contractual obligations." It also struck recitals in the report relative to the part allegedly played by the city manager in refusing permission to the plaintiff to remove the 65,008 yards of material. In the final decree the court adjudged that this material could be removed only with permission of the architect, and since that had not been given, "no right to removal arose and title to the material (75,000 cubic yards) was never acquired by the . . . [plaintiff]." The city therefore remained the owner of the material, and further "the word 'surplus' as used in this site preparation contract, referred to the whole project, not merely to the contract of the . . . [plaintiff]."

Our review of this case is governed by principles which have been often stated. The treatment of a master's report,

---

[1] Paragraph 35 of the contract read in part, "The Architect shall determine the amount, quality, acceptability and fitness of all parts of the work, shall interpret the Plans and Specifications, Contract Documents and Extra Work Orders, and shall decide all other questions in connection with the work."

which has no effect until it is confirmed, rests largely in the judge's discretion, calls for "a high degree of legal acumen and judicial wisdom . . . and seldom can be revised on appeal." *Minot* v. *Minot,* 319 Mass. 253, 257–258. We test the judge's action, in the absence of a report of the evidence, on the standard that the master's findings of fact must stand unless they appear as mutually inconsistent, contradictory, or plainly wrong. *Smith* v. *Knapp,* 297 Mass. 466, 469. *Boxborough* v. *Joatham Spring Realty Trust,* 356 Mass. 487, 489. However, "if from the facts reported it appears that any of the findings is not supported in law, or is incorrect in the judgment of the trial court, the findings may be modified or set aside." *Koffman* v. *Beserra,* 262 Mass. 165, 169. In this instance the question is whether there were sufficient facts before the judge to enable him to reform the report as he did. See *Leventhal* v. *Jennings,* 311 Mass. 622, 623–624.

The effect of this contract in writing was a matter of law for the court. *Wright* v. *Commonwealth,* 351 Mass. 666, 672. *Doral Country Club, Inc.* v. *O'Connor,* 355 Mass. 27, 31. The recitations of the contract relative to supervision of the architect generally and the necessity of procuring his permission to remove materials excavated during site work have been set out above. It is plain that he was given full power to grant or withhold such permission. Nothing in the master's report indicates any arbitrary or capricious exercise of that power. On the contrary, the architect's letter of August 7, 1967, demonstrates a careful employment of it. Compare *Farina Bros. Co. Inc.* v. *Commonwealth, ante,* 131. We see no breach of the contract in his refusal to allow removal of the debated material under the contract language that no excavated material should be removed from the site without the approval of the architect, giving that language its natural meaning. *Chas. T. Main, Inc.* v. *Massachusetts Turnpike Authy.* 347 Mass. 154, 163. The action of the judge in striking that portion of the report which dealt with the alleged intervention of the city manager was proper. Such alleged intervention was not permissible

under the plain meaning of the contractual language relative to the powers of the architect. In sum, the interpretation by the trial judge of the contract provisions was a reasonable construction. *Clark* v. *State St. Trust Co.* 270 Mass. 140, 153. The final decree expresses sound judicial action entirely suitable to a fair reading of the contract. See *United States Fid. & Guar. Co.* v. *English Constr. Co.* 303 Mass. 105, 112.

*Interlocutory decree affirmed.*
*Final decree affirmed.*