*Northern District*

## No. 8394

# MERRIMACK VALLEY NATIONAL BANK

**v.**

# G. STEWART BAIRD, JR. ET AL[1]

Argued: ............ Decided: November 9, 1976

---

[1] Companion cases are against: John P. Lazdowski, Clive B. Fazioli, Marcus Munsill and George Nason.

Case tried to *Tiffany, J.,* in the Central District Court of Northern Essex. No. 750-1973.

Present: Bacigalupo, J., (Presiding); Flynn, Forte, J.J.

**Forte, J.** This is a single report involving five actions that were consolidated and tried with a sixth action.[2]

Four actions were in contract arising out of the same instrument signed by the defendants Baird, Fazioli, Lazdowski and Nason allegedly guaranteeing obligations of a certain corporation to the plaintiff. The limiting amounts vary; Baird—$2500.00, Fazioli—$1500.00, Lazdowski—$1500.00, and Nason $1500.00.

The plaintiff's fifth action against Munsill is an action in contract based upon his alleged guaranty, limited to $3000.00, of all obligations of the corporation.

---

[2] The sixth action, against four other defendants, ended in a finding for the plaintiff and has not been reported.

*There was evidence that* on November 12, 1969 a standard form guaranty was signed by Baird, Fazioli, Lazdowski and Nason, each placing a figure after his signature; Bair placing $2500.00 and the other three placing $1500.00. In addition, it was signed by two others to wit: Bliss for $1500.00 and Mirsch for $1500.00. At the top of this instrument printed in bold type was the word "Guaranty" after which the following hand-printed phrase appeared: "For $10,000.00" and just under the printed word guaranty appeared "Nov. 12, 1969 for 120 days". These words were hand-printed by one of the guarantor-signers. After signing, the document was delivered to the plaintiff, and on the same date, the plaintiff loaned the corporation $19,700.00.

On February 27, 1970 Munsill signed and delivered to the plaintiff an undated standard form guaranteeing all the corporate obligations to the plaintiff, limiting his obligation to $3000.00.

In addition to the above mentioned loan of $19,700.00, the plaintiff made the following loans to the corporation:

| | |
|---|---|
| November 21, 1969 | $ 2,000.00 |
| February 13, 1970 | $10,000.00 |
| February 27, 1970 | $ 2,000.00 |
| February 27, 1970 | $59,000.00 |

All the loans, totalling $92,700.00, were evidenced by a standard form bank note signed by Bliss, President of the Corporation, and were at the time of trial still outstanding.

Almost twenty-two (22) months after the expiration of 120 days from November 12, 1969, to wit: on January 3, 1972, the plaintiff bank sent a letter to each defendant notifying each that the trustees of the corporation failed in their attempt to reorganize the corporation pursuant to Chapter XI of the Bankruptcy Act, and that the referee would place the corporation

in bankruptcy soon. Demand was then, for the first time, made upon the guarantors for the payment of the corporate debt.

On June 9, 1972 the plaintiff sent to each guarantor a letter notifying each that a Chapter XI bankruptcy plan was filed and outlined the plan. The bank further stated it intended to vote confirmation of the plan "while reserving its rights against all of the personal guarantors of the indebtedness" of the corporation "except Richard T. Bliss and Jean Bliss, his wife. The bank will still look to each remaining guarantor for payment of his obligation to it."

On September 28, 1972, all the defendants were informed that the Plan of Arrangement was before the Bankruptcy Court and that there would be no immediate benefit for the plaintiff bank; and therefore, it would look to the guarantors for payments as per their guaranty.

On November 15, 1972, a letter was sent to all the defendants informing them that after some delay the Plan of Arrangement should be approved by the Bankruptcy Court on November 29, 1972, which plan would not provide the bank with sufficient funds to pay the outstanding corporate loans and that the bank wished to meet with the guarantors on December 5, 1972, at its Lawrence office regarding their guaranty obligations.

There was testimony that the defendants, Lazdowski and Nason attended the December 5, 1972 meeting, at which meeting the plaintiff explained its intentions regarding the Plan of Arrangement and its intent to hold the defendants liable on their guaranty.

On February 23, 1973, letters were sent to all guarantors notifying them that the Chapter XI Bankruptcy Plan had been approved and that the bank would still look to the guarantors for payment of the corporate debt in accordance with the terms of their personal guaranty.

There was testimony from the plaintiff's loan officer that on June 18, 1973 Richard T. Bliss personally gave the plaintiff a note payable to it in the sum of $11,275.59 in exchange for the release of his personal guaranty of corporate debt. The note of Mr. Bliss for $11,275.59 is still outstanding. The plaintiff has never released Mr. Bliss from his liability under this note.

There was further evidence that the guarantors (not including Munsill) decided among themselves to limit their liability in amount and time by placing figures and language on the guaranty form.

At the close of the evidence the plaintiff filed the following requests for rulings which were denied:

**11.** The limitation of "for 120 days" on the joint guaranty of the defendants, Baird, Fazioli, Lazdowski and Nason, limits the time during which the Merrimack Valley National Bank could make loans to Bliss/Pack, Inc. for which loans the guarantors agreed to guarantee.

**12.** The limitation of "for 120 days" on the joint guaranty of the defendants, Baird, Fazioli, Lazdowski and Nason did not limit the time during which the Merrimack Valley National Bank must have made demand upon the above defendants for repayment of the obligation of Bliss/Pack, Inc., which were guaranteed by such guaranty.

13. The intent of the defendants, Baird, Fazioli, Lazdowski and Nason with respect to the meaning of "for 120 days" when they signed the joint guaranty is not binding on the Merrimack Valley National Bank as that intent was never conveyed to it.

**15.** Since notice was given by Merrimack Valley National Bank reserving the bank's rights against each guarantor by letters of June 9, 1972, September 28, 1972, November 15, 1972 and also on February 23, 1973, their knowledge of any dealings prohibits them from raising any defense

which would discharge them on the basis of dealings of Merrimack Valley National Bank and Bliss/Pack, Inc.

In addition, the defendants filed the following requests which were allowed:

**5.** That time was the essence for presentment of defendants, Clive Fazioli, G. Stewart Baird, Jr., George Nason and John P. Lazdowski, Guarantees as a condition precedent.

**6.** That presentment was not timely made hence rendering said guarantees null and void.

**7.** That the written terms on the above mentioned guarantees of the defendants govern and modify, if all placed applicable, the printed terms in the body of the contract of guaranty so drafted by the plaintiff.

**9.** That the plaintiff, without the defendants' knowledge or consent, dealt with the majority stockholder, Richard T. Bliss, in the execution of certain notes and other instruments both personal and corporate, for little or no consideration.

**10.** That the majority stockholder, Richard T. Bliss, was thereby discharged from any and all liabilities as a maker and endorser or guarantor of any instrument.

The trial justice found for each of the defendants in the reported cases and the plaintiff claims to be aggrieved by the denial of its above four (4) requests and by the allowance of the above five (5) defendant requests.

The court made, among others, the following findings:

**1.** The plaintiff is *prima facie* a holder in due course.

**2.** "Fazioli, Lazdowski, Baird and Nason were sureties for specified amounts" and beyond the

120 day period from November 12, 1969 "without a demand being made on the sureties, the surety was void"; that "no demand was made within the 120 day period, and the sureties were released from their suretyship."

**3.** Munsill was a guarantor; that his guaranty is not a negotiable instrument and it was undated.

As to Fazioli, Lazdowski, Baird and Nason there was no error.

■ A guaranty is where some party primarily liable for a debt and that the guarantor will pay it if the primary debtor does not. *Charlestown Five Cents Savings Bank v. Wolfe,* 309 Mass. 547, 549 (1941).

■ The liability of guarantors is to be ascertained from the terms of the written contract construed according to the usual rules of interpretation read in conjunction with the subject matter. *Schneider v. Armour,* 323 Mass. 28, 30 (1948).

Handwritten terms control printed terms. G.L.c. 106, §3-118(b).

■ A guarantor may limit his liability as to amount and time. The guaranty continues during such time as is expressly provided for in the contract of guaranty. 38 C.J.S. 1205.

Fazioli, Lazdowski, Baird and Nason under the printed word "Guaranty" placed the phrase "Nov. 12, 1969 for 120 days", thus limiting the time of the guaranty.

■ "A contract of guaranty is to be construed strictly, and the guarantor is not to be held liable for anything not in accord with the contract." *Zimetbaum v. Berenson,* 267 Mass. 250, 255 (1929).

■ In interpreting a contract of guaranty, the language of the instrument is not to be construed most strongly against the party who wrote it, but,

a guaranty being commercial in nature, the language used shall be taken according to its ordinary acceptation and common meaning, without any special leaning against the maker of the instrument. *Keith v. Thomas,* 266 Mass. 566, 571 (1929).

Therefore, the making of a demand upon the guarantors almost twenty-two months after the 120 day written limitation, came after the guaranty had expired. There was no error in denying plaintiff's requests 11, 12, 13 and 15, and in allowing defendants' requests 5, 6 and 7.

There was no error in allowing defendants' requests No. 9 and No. 10 because No. 9, calling for finding of fact, presents no question of law, and No. 10 has no relevance to the plaintiff's claim against these defendants.

As to the defendant Munsill there was error. Unlike the other defendants, Munsill has no limitation written in on his guaranty.

The only ruling from which the plaintiff claims to be aggrieved that relates to the defendant Munsill is plaintiff's request #15. The trial justice relied on *Gifford v. Allen,* 3 Met. 255 (1841) wherein it was held that by the obligee giving a delay of payment to the principal without the assent of the surety, the surety is discharged. However, in Munsill's contract of guaranty, he assented "to any renewal, extension or postponement of the time of payment or any other indulgence . . ." See G.L.c. 106, §3-118(f); §3-511(6). Therefore, it was error to deny request #15 as to the defendant Munsill.

The report is dismissed as to actions #73-750 (Baird), 73-755 (Lazdowski), 73-754 (Fazioli) and 73-757 (Nason) and in action #73-756 (Munsill) the finding for the defendant is vacated and a finding for the plaintiff is to be entered in the amount of $3000.00.