MERRIMACK VALLEY NATIONAL BANK *vs.*
G. STEWART BAIRD, JR.
(and three companion cases[1]).

Essex.    April 7, 1977. — June 8, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Exoneration.   Guaranty.   Surety.*

Ambiguity in a guaranty contract was construed strictly against the
    guarantors as authors of the writing. [723-725]
In an action by a bank to enforce the terms of a guaranty contract, the
    guarantors were not discharged from liability under the contract by
    the fact that the bank altered the terms of repayment of loans by the
    bankrupt corporate promisor without the express assent of the guar-
    antors where by the terms of the contract the guarantors assented in
    advance "to any renewal, extension or postponement of the time of
    payment or any other indulgence." [725-726]

FOUR ACTIONS OF CONTRACT.   Writs in the Central Dis-
trict Court of Northern Essex dated October 5, 1973.
    The actions were heard by *Tiffany*, J.
    *Richard J. Sheehan, Jr.*, for the plaintiff.
    *Stephen M. Lalikos* for the defendants.

HENNESSEY, C.J.   This is a consolidated appeal involv-
ing four contract actions which were tried together. A
judge of a District Court found for the defendants, and
the plaintiff appealed to the Appellate Division of the Dis-
trict Courts, Northern District, which dismissed its report.
Thereafter the plaintiff appealed to this court. We con-
clude that there was error and that the order dismissing
the report must be reversed.

---

[1] The companion cases are by the same plaintiff against Clive B.
Fazioli, John P. Lazdowski, and George Nason.

The evidence showed that the defendants signed[2] and delivered to the Merrimack Valley National Bank (bank) a standard form guaranty contract on which one guarantor-signer had written, "For $10,000.00 Nov. 12, 1969 For 120 days." Under the standard form contract the defendants guaranteed "[f]or valuable consideration," all obligations of Bliss/Pack, Inc., "now existing or hereafter arising, which are incurred prior to the receipt by the Bank of written notice of the revocation of this guaranty." They also waived "notice of any loans made, extensions granted, or other action taken in reliance hereon and ... assent[ed] to any renewal, extension or postponement of the time of payment or any other indulgence." A typewritten insertion in the contract form stated that maximum liability thereunder was "as detailed below." See note 2 *supra*.

After delivery of the instrument, the bank and Bliss/Pack, Inc. (Bliss/Pack), executed a demand note for $19,-700. Between November 21, 1969, and February 27, 1970, the bank made additional loans to Bliss/Pack of $73,000.

On January 3, 1972, the bank for the first time made demands on the defendants as guarantors for payment of Bliss/Pack's loans. Subsequently the defendants were notified that there were insufficient funds available, under a bankruptcy proceeding against Bliss/Pack in the United States District Court, to pay outstanding Bliss/Pack loans, and that the bank looked to the defendants for payment of $10,000 in accordance with the terms of their personal guaranties. The defendants refused to pay this sum.

The trial judge in the instant cases decided that the defendants intended to limit the time of their guaranty by adding the restrictive phrase, "For $10,000.00 Nov. 12, 1969 For 120 days," to the guaranty contract. The judge concluded that the defendants were not liable to the bank under their guaranty contract because the bank failed to

---

[2] The contract was signed by five persons, each of whom placed a dollar figure after his signature. The fifth guarantor, Richard T. Bliss, is not a party to this action, and the effect of the handwritten figures on the defendants' liability under their contract is not at issue in this appeal.

demand repayment from them within the contract period of 120 days. In addition, the judge ruled that the bank's involvement (without the defendants' consent) in the attempted reorganization of the bankrupt corporate promisor as matter of law discharged the defendants of their obligations as guarantors.

As shown by the language of its written opinion, the Appellate Division based its decision essentially on reasoning that the handwritten language in the contract limited in time all obligations of the defendants, and that their potential liability was ended when the bank failed to make demand of the defendants within the 120-day period.

The bank disputes these conclusions. It argues that the restrictive phrase added to the guaranty contract imposed a limit on the time during which it could extend credit to Bliss/Pack in reliance on the defendants' guaranty. It further maintains that the defendants waived their right to claim discharge of their obligation due to the bank's reorganization dealings with the corporate promisor in the guaranty contract and because the defendants themselves had knowledge of Bliss/Pack's attempt to reorganize under c. 11 of the Bankruptcy Act. The bank seasonably filed appropriate requests for rulings raising these matters, and the requests were denied by the judge.

After examination of the record before us, we conclude that the phrase "For 120 days" did not limit the duration of the guaranty but, instead, limited the period during which the bank could extend credit in reliance on the guaranty. In addition, we conclude that the defendants waived the necessity for assent to changes in the payment schedule established by the bank and the corporate promisor. Consequently, we hold that the judge below erred in ruling the defendants not liable to the bank on their guaranty contract.

1. The defendants' liability as guarantors is ascertained from the terms of the written contract. *Schneider* v. *Armour & Co.*, 323 Mass. 28, 30 (1948). When the words of a contract are clear they alone determine the meaning of the contract but, when a contract term is ambiguous, its

import is ascertained from the parties' intent as manifested by the guaranty's terms and the circumstances surrounding its creation, such as relationship of the parties, actions of the parties and established business usages. *Zeo* v. *Loomis*, 246 Mass. 366, 368 (1923). See *Schneider* v. *Armour & Co.*, *supra*; *Standard Plumbing Supply Co.* v. *LaConte*, 277 Mass. 497, 499 (1931). Clearly the language "For 120 days" created ambiguity, particularly since it contradicted language in the printed contract which provided that the guaranty extended to all loans made prior to written notice of revocation by the guarantors. However, the record in these cases sheds no light on the parties' intent with regard to the term "For 120 days."[3] Contrast *Sullivan* v. *Arcand*, 165 Mass. 364 (1896) (surrounding circumstances show parties intended a continuing guaranty contract). Therefore, we look to the rules of contract construction to establish the legal meaning of the term "For 120 days" as employed in this contract.

As a general rule, a writing is construed against the author of the doubtful language, *Wright* v. *Commonwealth*, 351 Mass. 666, 673 (1967), if the circumstances surrounding its use and the ordinary meaning of the words do not indicate the intended meaning of the language. *Aldrich* v. *Bay State Constr. Co.*, 186 Mass. 489, 491 (1904). The author of the ambiguous term is held to any reasonable interpretation attributed to that term which is relied on by the other party.

This court has held, in cases involving guaranty contracts, that ambiguities generally are not construed strictly against the guarantors. *Keith* v. *Thomas*, 266 Mass. 566, 571 (1929). This principle is justified presumably by the secondary nature of the guarantor's participation. In the cases before us, however, unlike most cases involving guar-

---

[3] Very little oral testimony was heard. One of the defendants testified that the guarantors decided among themselves that the language "For 120 days" would be placed on the guaranty form to limit their liability in amount and in time. This testimony was without significance because the witness further testified that the meaning of "For 120 days" was never conveyed to the bank.

anty contracts, the guarantors were the authors of the disputed and ambiguous language. Therefore, we conclude that the defendants are not entitled to the protection of the *Keith* rule, *supra*; that the normal rules of contract construction apply in these cases; and that therefore the writing is to be construed strictly against the defendants as authors of the writing. See the *Wright* and *Aldrich* cases, *supra.*

Applying such a rule of construction we need only decide whether the bank's interpretation of the phrase "For 120 days" — as a limit on the period for extension of credit — was reasonable. Clearly it was. The guaranty contract covered all obligations of Bliss/Pack, not merely short term loans, and the language at issue is susceptible of many meanings.[4] The bank relied on its interpretation of the ambiguous phrase and extended substantial loans to Bliss/Pack within 120 days of the guaranty date. Therefore, we hold that the judge below erred in ruling that the defendants were not liable under their guaranty contract because of the bank's failure to demand repayment within 120 days of the contract's date.

2. Moreover, we hold that the defendants are not discharged from liability under their guaranty contract, even though the bank (attempting to prevent the bankruptcy of Bliss/Pack and thus to secure full repayment of its Bliss/Pack loans) altered the terms of repayment of the Bliss/Pack loans without the express assent of the defendants. Although as a general rule the bank's acts might well discharge the defendants from their obligations as guarantors, under the terms of the guaranty contract the defendants consented in advance to these acts. They are bound by their agreement which makes the general

---

[4] This phrase could import into the contract an implied revocation of guaranty after 120 days. (Note that the intention to revoke a guaranty must be clearly inferable from the language used. A. Stearns & J. Elder, Suretyship 88 [5th ed. 1951].) It also could limit the scope of the guaranty to loans defaulted on within 120 days of the contract date. Such a meaning could have been achieved clearly through use of a phrase such as "default within 120 days."

rule inapplicable. *Snelling* v. *State St. Bank & Trust Co.,* 358 Mass. 397, 405-406 (1970). *Provident Co-op. Bank* v. *James Talcott, Inc.,* 358 Mass. 180, 192 (1970).[5] This is particularly true since the defendants' insertion of handwritten terms into the guaranty warrants, even requires, an inference that they considered carefully and understood the terms of the contract they signed.

Since the defendants are liable as guarantors under the terms of their guaranty contract we conclude that the order of the Appellate Division dismissing the report must be reversed. The actions are remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

[5] Therefore we need not decide whether the defendants waived their right to consent to the alteration of repayment terms by their knowledge in fact of the alterations.

