Kottmyer, J.
Plaintiff Pegasystems, Inc. and two of its officers (collectively “Pegasystems”) brought this action against the defendant Ernst & Young and Alan B. Levine (collectively “E&Y’) seeking damages for professional malpractice, negligent misrepresentation, breach of fiduciary duty, contribution, business defamation and violation of G.L.c. 93A. The defendants have moved to dismiss Pegasystems’s complaint, or, in the alternative, to stay the proceedings based on Pegasystems’s failure to comply with the dispute resolution procedures set forth in an agreement between the parties. For the reasons discussed below, E&Y’s motion to dismiss is ALLOWED.

BACKGROUND

In 1983, Pegasystems retained Arthur Young & Co., now E&Y, to serve as Pegasystems’s independent auditors. In November 1995, E&Y and Pegasystems executed an Engagement Letter, drafted by E&Y “to confirm our engagement to audit and report on the financial statements of Pegasystems, Inc. for the year ending December 31, 1995.” E&Y contends that the Engagement Letter requires that the claims which are the subject matter of this lawsuit be submitted to arbitration. Paragraph 11 of the Engagement Letter states:
Any controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by us to the Company (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agent of the Company or of Ernst & Young LLP) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to this letter. Judgment on any arbitration award may be entered in any court having proper jurisdiction.
Dispute Resolution Procedures (“the Procedures”) attached to the Engagement Letter provide that “the following procedures shall be used to resolve any controversy or claim (’dispute’) as provided in our engagement letter of October 18, 1995.” The Procedures also provide as follows:
Any issues concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforcement of these procedures, including any contention that all or part of these procedures are unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators.
The advice given by E&Y that is at issue in this suit concerned the “accounting implications” of a proposed transaction between Pegasystems and First Data Resources, Inc., including advice as to “how to structure some of the various components of the overall deal in order to achieve certain revenue recognition objectives.” Plaintiffs’ Memorandum in Opposition to Defendants’ Motion to Dismiss at 5. The complaint alleges that based on this advice, Pegasystems recognized five million dollars in revenue in its second quarter 1997 financial statements. E&Y initially confirmed in writing that in recognizing the revenue, Pegasystems was acting in accordance with Generally Accepted Accounting Principles. E&Y subsequently reversed its position and Pegasystems was forced to restate its earnings for the second quarter of 1997. When E&Y provided the above advice to Pegasystems, the parties contemplated that E&Y would perform the 1997 year-end audit. E&Y billed Pegasystems separately for this advice noting that its services included “Revenue recognition/Contract Consulting” and “consultations . . . regarding the accounting for the contract with First Data."
Pegasystems contends that the Engagement Letter applies only to the 1995 and subsequent year-end audits. It asserts that the present claims arise out of advice given by E&Y on a potential business transaction and the arbitration clause and Dispute Resolution Procedures do not apply. The argument is without merit.

DISCUSSION

E&Y has moved to dismiss Pegasystems’s complaint or stay the proceedings pursuant to the Federal Arbitration Act (“FAA”), 9 U.S.C. §1 et. seq. (1988). The FAA provides that “a dispute is arbitrable if it falls within the scope of a written arbitration agreement that is otherwise valid and enforceable.” Carpenter v. Pomerantz, 36 Mass.App.Ct. 627, 628 (1994); 9 U.S.C. §2. The FAA “createfs] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA governs the arbitrability of disputes in state or federal court. Carpenter, 36 Mass.App.Ct. at 628 n.3 (citing Moses H. Cone Mem’l Hosp., 460 U.S. at 24).
In determining whether a particular agreement calls for arbitration, the general principles of contract law should apply. Mugnano-Bornstein v. Crowell, 42 Mass.App.Ct. 347, 350 (1997). As such, any ambiguities in the language of the contract should be construed against its drafter. Merrimack Valley Nat’l Bank v. Baird, 372 Mass. 721, 724 (1977). However, “questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration” over litigation. Moses H. Cone Mem’l Hosp., 460 U.S. at 24. In addition, under the FAA, “any doubts regarding arbitrability should be resolved in favor of coverage ’unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.’ ” Mugnano-Bornstein, 42 Mass.App.Ct. at 351 (quoting Peerless Pressed Metal Corp. v. International Union of Elec. Radio and Mach. Workers, AFL-CIO, 451 F.2d 19, 20 (1st Cir. *138 1971)). Lastly, “the question of who has the primary power to decide arbitrability turns upon what the parties agreed to about the matter.” First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).
The arbitration clause contained in paragraph 11 of the Engagement Letter is broad; it covers “[a]ny controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by us to the Company...” (Emphasis added.) The clause is unambiguous and does not limit the applicability of arbitration to claims and controversies arising out of year-end audits.
Pegasystems’s claims of professional malpractice, negligent misrepresentation, breach of fiduciary duty, business defamation, and violation of c. 93A clearly arise out of services provided by E&Y after the Engagement Letter was executed. However, relying on language in paragraph 9 of the Engagement letter, Pegasystems argues that the services which led to the dispute at issue did not concern a year-end audit and therefore were not services “covered by this letter.” Paragraph 9 provides in pertinent part:
In addition, fees for any special audit related projects, such as proposed business combinations or research and/or consultation on special business or financial issues, will be billed separately from the audit fee referred to above and may be the subject or [sic] written arrangements supplemental to those in this letter.
The language relied on by Pegasystems contemplates that projects other than the year-end audits may be subject to separate written agreements, which will be “supplemental” to the terms of the Engagement Letter. Supplemental is defined as something added to complete a thing or extend or strengthen the whole. The American Heritage Diet. (2nd College Ed. 1985). By definition, then, a supplemental agreement adds to and does not supplant or replace the earlier agreement absent an express provision to that effect. Here, there is no supplemental agreement, much less one that contains terms in conflict with dispute resolution provisions set forth in the Engagement Letter. The dispute resolution procedures therefore apply to special audit related projects, like the project at issue, involving research and/or consultation on special business or financial issues. To the extent that Pegasystems is arguing that the advice provided in this case was not “audit related” within the meaning of the Engagement Letter, the Procedures expressly provide that issues as to arbitrability shall be governed by the Federal Arbitration Act and “resolved by the arbitrators.” First Options of Chicago, Inc., 514 U.S. at 943.
Section 3 of the FAA provides that when claims are properly referable to arbitration, the court, upon application of one of the parties, shall stay the trial of the action until arbitration is complete. 9 U.S.C. §3. How- • ever, courts have held that this rule was not intended to limit dismissal of a case in the proper circumstances. Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988). Since the Engagement Letter requires that all the claims contained in Pegasystems’s complaint must be submitted to arbitration, there is no reason for this Court to retain jurisdiction and stay the action. Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc., 636 F.Sup. 750, 757 (D.C. Puerto Rico 1986). “Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator’s award in the limited manner prescribed by law ."Alford, 975 F.2d at 1164; 9 U.S.C. §§9-12. Therefore, since there are “no live controversies before this Court, the appropriate procedure is dismissal of the action, without prejudice.” Sea-Land Service, Inc., 636 F.Sup. at 757 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 13).

ORDER

For the foregoing reasons, it is therefore ORDERED that the defendant’s Motion to Dismiss or Stay the Proceedings is hereby ALLOWED and judgment shall enter dismissing the plaintiffs complaint.