## AFFILIATED FM INSURANCE COMPANY *vs.* CONSTITUTION REINSURANCE CORPORATION.

Norfolk. October 7, 1993. - January 28, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance,* Facultative reinsurance. *Contract,* Insurance, Construction of contract. *Evidence,* Custom and usage, Extrinsic affecting writing. *Words,* "Expenses."

On appeal from the allowance of the defendant reinsurer's motion for summary judgment in an action seeking a declaration that the defendant was required, under its facultative reinsurance certificate, to reimburse the plaintiff insurer for its legal expenses in defending itself in a separate action for declaratory relief brought by the plaintiff's insured to determine coverage, this court vacated the judgment and remanded the case to the Superior Court for consideration of extrinsic evidence of the pertinent custom and usage of reinsurance practice in order to determine the meaning of a provision in the reinsurance certificate that was ambiguous with regard to whether the parties intended the reinsurance certificate to cover litigation expenses incurred in the first declaratory action. [842-846] O'CONNOR, J., dissenting, with whom LYNCH, J., joined.

CIVIL ACTION commenced in the Superior Court Department on August 30, 1989.

The case was heard by *Patrick F. Brady*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Alan R. Miller* (*Rosemary Connolly* with him) for the plaintiff.

*Mitchell S. King* (*Alice Olsen Mann* with him) for the defendant.

*Thomas W. Brunner, Christopher D. Cerf & John C. Yang*, of the District of Columbia, & *Rosanna Sattler & Jef-*

*frey W. Armstrong*, for American Insurance Association, amicus curiae, submitted a brief.

*Debra J. Anderson & George M. Brady, III*, of the District of Columbia, for The Reinsurance Association of America, amicus curiae, submitted a brief.

ABRAMS, J. The plaintiff, Affiliated FM Insurance Company, appeals from the allowance of the defendant's motion for summary judgment. Affiliated brought this action seeking a declaration that the defendant, Constitution Reinsurance Corporation, was required, under its facultative reinsurance certificate (FRC), to reimburse Affiliated for its legal expenses in defending itself against a declaratory judgment action brought by its insured, Campbell Soup Company. A Superior Court judge ruled that the terms of the facultative certificate were unambiguous, and that Affiliated's legal expenses were not covered under the certificate. We allowed Affiliated's application for direct appellate review. We reverse and remand for further proceedings.

*Facts.* The material facts are not in dispute. Affiliated insured Campbell under three consecutive one-year excess liability umbrella insurance policies from August 1, 1976, through August 1, 1979. For each of the policy years, Constitution, pursuant to three facultative certificates, reinsured a portion of Affiliated's risks.

Constitution drafted each of the three certificates. Under the FRC in question, Constitution agreed to indemnify Affiliated for fifteen percent of the risk insured under Campbell's policy with Affiliated. In exchange, Affiliated paid Constitution fifteen percent of the $40,000 premium it received from Campbell ($6,000), less a twenty-two and one-half percent commission ($1,350). The FRC did not alter or affect Affiliated's obligations to Campbell in any way, nor did it confer any contractual rights on Campbell. Constitution never has had any direct relationship with or obligation to Campbell.

In 1987, the Equal Employment Opportunity Commission (EEOC) charged Campbell with discriminating, on the basis of race and gender, in the hiring and promotion of employees at its Texas facility. Campbell brought suit against Affiliated

in a New Jersey Superior Court seeking a declaration that Affiliated had a duty to pay for Campbell's defense in the EEOC action and a duty to pay any damages that might be assessed against Campbell by EEOC. Affiliated denied any obligation to defend or indemnify Campbell in the EEOC action, and retained counsel to defend it in the declaratory judgment action.[1] In 1991, the Supreme Court of New Jersey affirmed a lower court's entry of summary judgment in favor of Affiliated. *Campbell Soup Co.* v. *Liberty Mut. Ins. Co.*, 239 N.J. Super. 403 (1990). Affiliated thereby was relieved of any duty to defend or to indemnify Campbell in the EEOC action.[2]

Affiliated thus billed Constitution for $17,879.58, fifteen percent of the legal expenses it incurred in defending the declaratory judgment action filed by Campbell.[3] Constitution refused to make payment on the basis that it had no obligation to contribute to the cost of defense of Campbell's action. Constitution asserted that the expenses were not risks covered under the FRC.[4]

---

[1] In July, 1987, when Affiliated advised Constitution of the EEOC action against Campbell, Constitution posted a liability reserve under the facultative certificate to cover its potential liability exposure.

[2] Shortly thereafter, EEOC terminated its investigation without assessing any fines or penalties against Campbell.

[3] Affiliated reinsured portions of the Campbell Soup policy with other reinsurers pursuant to separate facultative certificates. The plaintiff's brief reports that only Constitution has refused to pay its portion of Affiliated's legal expenses in the Campbell Soup litigation.

[4] The material language of the facultative certificate is found in clauses A and D. Clause A provides in pertinent part: "The liability of the Reinsurer [Constitution] . . . shall follow that of the Company [Affiliated] subject in all respects to all of the terms, conditions, and limits of the Company's policy [issued to Campbell] except when otherwise specifically provided herein . . . ." Clause D provides: "Upon receipt of a definitive statement of loss, the Reinsurer shall promptly pay its proportion of such loss as set forth in the Declarations. In addition thereto, the Reinsurer shall pay its proportion of expenses [other than office expenses and payments to any salaried employee] incurred by the Company in the investigation and settlement of claims or suits and its proportion of court costs and interest on any judgment or award, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment."

*Discussion.* The central issue is whether "expenses [other than office expenses and payments to any salaried employee] incurred by the Company in the investigation and settlement of claims or suits" includes legal expenses incurred in defending a declaratory judgment action brought by the insured. We must look to the language of the FRC to resolve this issue. Construing the language of an insurance contract is a question of law for the reviewing court. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982).

It is unclear whether the parties intended the contract to include litigation expenses for declaratory relief brought by an insured against its insurer to determine coverage. "When the written agreement, as applied to the subject matter, is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms." *Keating* v. *Stadium Management Corp.*, 24 Mass. App. Ct. 246, 249 (1987),[5] quoting *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973).

Affiliated contends that the commentators have spoken with one voice on this question and uniformly have concluded that the reinsurer *is* contractually obliged to bear its proportionate share of the legal costs associated with investigating, and, where appropriate, resisting demands for coverage. There is support for Affiliated's position among the insurance treatises.[6] The treatises are not dispositive of the issue before

---

[5]The parties submitted to the judge conflicting affidavits and depositions of Constitution's practice. Because the judge determined that the contract was unambiguous, he refused to consider extrinsic evidence offered by each party of Constitution's practice. We have only Affiliated's documents in the record before us. Therefore, we do not reach or decide the issue whether the evidence was admissible as evidence of the parties' intentions.

[6]See, e.g., 19 G. Couch, Insurance § 80:68, at 675 (2d ed. 1983) ("If the original insured sues the original insurer and the reinsurer is notified and refuses or neglects to defend, it [the reinsurer] is bound by the judgment against the insurer, and is liable for the reasonable and necessary expenses and costs incurred bona fide in such defense . . ."); 13A Appleman & Appleman, Insurance Law and Practice § 7700, at 566-567 (1976) ("The reinsurer is liable to the reinsured for all costs incurred in good faith in defending the suit brought by the original insured,

the court. They do, however, state general principles drawn from the older cases. Constitution has not cited any commentators which support its position on the precise issue before us.[7]

Nor have we found any case law addressing this issue directly.[8] *Bellefonte Reinsurance Co.* v. *Aetna Casualty & Sur. Co.*, 903 F.2d 910 (2d Cir. 1990), relied on by the Superior Court judge, addressed a different question: whether a reinsured was entitled to payment for defense costs in excess of the stated liability limit of the policy. The amount sought by Affiliated in this case is well within the policy limit. *Bellefonte* did not deal with the issue of litigation expenses incurred during the process of coverage determination.

---

or brought against the original insured . . ."); K. R. Thompson, Reinsurance 328-329 (4th ed. 1966) ("If a reassured is sued by the original insurer, it would be under a duty to defend the case . . . and the costs which necessarily arise in such a suit might be considered as incurred upon reasonable grounds, and are allowed as composing part of a claim of indemnity against the reinsurer").

[7]See G. Staring, Law of Reinsurance § 15:2[5], at 12 n.58 (1993), citing Schmidlin, The Scope of Reinsurance Coverage: The Costs of Declaratory Judgments and the Problem of Punitive Damages, in International Reinsurance: Asbestos Claims 87, 89-91 (1988) ("[T]here is . . . a large class of affirmative defenses through declaratory actions about which there may be differences of opinion, even though the defense may ultimately benefit the reinsurer. . . . Declaratory judgment actions brought *by insurers against their insureds* . . . have become very numerous and expensive and the view has been expressed by a prominent reinsurance executive that the costs of some of them are not properly for reinsurers' accounts . . ." [emphasis added]). In the present case, Affiliated did not initiate the declaratory judgment action, but was instead defending an action brought by Campbell, its insured.

[8]Affiliated relies on several Nineteenth Century cases to support its argument. See *New York State Marine Ins. Co.* v. *Protection Ins. Co.*, 18 Fed. Cas. 160 (D. Mass. 1841); *Faneuil Hall Ins. Co.* v. *Liverpool & London Globe Ins. Co.*, 153 Mass. 63 (1891); *Hastie* v. *DePeyster*, 3 Cai. R. 190 (N.Y. Sup. Ct. 1805). As the Superior Court judge pointed out in his order allowing summary judgment: "In the above cases, however, the specific contract language relied on by the courts, if any, is not recited or discussed in any meaningful way. Thus, at best, the cases may establish Affiliated's entitlement to reimbursement in the absence of policy language to the contrary."

In *Bellefonte*, the court concluded that in spite of language which provided for expenses "in addition thereto," all defense costs were "subject to" the express cap on liability set forth in the certificate. *Bellefonte, supra* at 914. Relying on this reasoning, Constitution argues that clause D which obligates Constitution to pay its proportion of expenses is limited by the "subject to" language in clause A. Clause A states that the liability of Constitution "shall be subject in all respects to all the terms, conditions, and limits of the Company's policy except when otherwise specifically provided herein . . . ." Constitution asserts that Affiliated's legal expenses are not within the terms and conditions of the Campbell policy, nor are they expenses specified in clause D. Clause D provides that "in addition" to loss payments, Constitution shall pay "expenses . . . incurred . . . in the investigation and settlement of claims or suits." Constitution's reading of the interaction of clauses A and D leaves unresolved the question of what is included by the term "expenses."

The Superior Court judge interpreted the language of the certificate to limit "expenses" to those expenses that would be covered under the terms and conditions of the Affiliated-Campbell policy; for example, expenses incurred in defending Campbell from liability. The dissent agrees with the Superior Court that the meaning of the word "expenses" is clear, and cannot reasonably be interpreted to include expenses incurred in coverage litigation, *post* 846.

" 'Expenses' is a word of broad import. It has no fixed definition. It is of varying signification and is dependent for its precise meaning upon its connection and the purpose to be accomplished by its use. It is comprehensive enough to include a wide range of disbursements. Standing alone, it is ambiguous." *Pittsfield & N. Adams R.R.* v. *Boston & Albany R.R.*, 260 Mass. 391, 397 (1927). Read in the context of the entire certificate, the two clauses, taken together, do not clarify the meaning of "expenses."

Affiliated contends that, if there is doubt concerning the scope of expenses, the doubt should be resolved against Con-

stitution, the drafter of the certificate. Although there is a rule of construction that certain writings are to be construed against the author of the doubtful language, (*Merrimack Valley Nat'l Bank* v. *Baird*, 372 Mass. 721, 724 [1977], citing *Wright* v. *Commonwealth*, 351 Mass. 666, 673 [1967]), that rule must give way to the primary objective that a contract is to be construed to reflect the intention of the parties. *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 225 (1981).

Where, as here, the contract language is ambiguous, evidence of trade usage is admissible to determine the meaning of the agreement. See Restatement (Second) of Contracts § 222 comment b (1981).[9] "The argument that a contract may not be 'varied' by evidence of pertinent custom and usage misconceives the role played by such evidence. 'Valid usages known to contracting parties, respecting the subject matter of an agreement, are by implication incorporated therein, unless expressly or impliedly excluded by its terms, and are admissible to aid in its interpretation, not as tending in any respect to contradict or vary a contract, but upon the theory that the usage forms a part of the contract.'" *Hardware Specialties, Inc.* v. *Mishara Constr. Co.*, 2 Mass. App. Ct. 277, 280 (1974), quoting *Baccari* v. *B. Perini & Sons*, 293 Mass. 297, 303 (1936). See *A.J. Cunningham Packing Corp.* v. *Florence Beef Co.*, 785 F.2d 348, 351 (1st Cir. 1986). See also 3 A. Corbin, Contracts § 555, at 232-233 (1960).

Express terms are to be given preference in interpretation over course of performance and usage of trade.[10] "After interpretation has called to its help all those facts which make up the setting in which the words are used . . . the words

---

[9]Comment b states in part: "There is no requirement that an agreement be ambiguous before evidence of a usage of trade can be shown, nor is it required that the usage of trade be consistent with the meaning the agreement would have apart from the usage."

[10]See Restatement (Second) of Contracts § 203 (b) (1981) ("[E]xpress terms are given greater weight than course of performance, course of dealing, and usage of trade, course of performance is given greater weight than course of dealing or usage of trade, and course of dealing is given greater weight than usage of trade").

themselves remain the most important evidence of intention."
*Robert Indus., Inc.* v. *Spence, supra* at 755, quoting *National City Bank* v. *Goess*, 130 F.2d 376, 380 (2d Cir. 1942).
"In interpreting contracts, '[t]here is in fact no "one correct"
meaning of an expression . . . . If there is a plain, ordinary,
and proper meaning of a term, that is evidence of how the
parties intended to use that term. Similarly, trade or business
usage is also relevant.' " *Jamesbury Corp.* v. *Worcester Valve Co.*, 443 F.2d 205, 210 (1st Cir. 1971), quoting 3
Corbin, Contracts § 535, at 16 (1970).

The existence and scope of a usage of trade are questions
of fact. See Restatement (Second) of Contracts § 222 (2)
(1981); *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85,
103 (1983). At the hearing, although the parties submitted
extrinsic evidence of Constitution's practice, neither party offered evidence of the pertinent custom and usage.[11] Where,
as here, the contract language is ambiguous, evidence of custom and trade practice may be admitted to arrive at an interpretation "which appears to be in accord with justice and
common sense and the probable intention of the parties."
*Keating* v. *Stadium Management Corp.*, 24 Mass. App. Ct.
246, 252 (1987), quoting *Clark* v. *State St. Trust Co.*, 270
Mass. 140, 153 (1930). The case is remanded to the Superior
Court for further proceedings.

*So ordered.*

O'CONNOR, J. (dissenting, with whom Lynch, J., joins).
The court states that "[w]here, as here, the contract language is ambiguous, evidence of trade usage is admissible to
determine the meaning of the agreement." *Ante* at 845. I
agree that there is a rule that "[w]hen the written agreement, as applied to the subject matter, is in any respect un-

---

[11]The amicus brief submitted by the American Insurance Association, a
national trade organization representing 252 insurance companies, specifically requests that the case be remanded in order to develop a more complete record concerning industry practice.

certain or equivocal in meaning, all the circumstances of the parties leading to its execution [including known trade custom and usage] may be shown for the purpose of elucidating, but not of contradicting or changing its terms." *Keating* v. *Stadium Management Corp.*, 24 Mass. App. Ct. 246, 249 (1987), quoting *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973). However, since the facultative reinsurance certificate at issue in this case, as applied to the subject matter, is not in any respect uncertain or equivocal in meaning, resort to evidence of trade usage is inappropriate. I would affirm the judgment.

"[T]he purpose of ascertaining the expressed intent of the parties is to be accomplished by examining the contract or policy as a whole. The intent of the parties is to be ascertained from the language of the entire policy considered as a whole in connection with the risk or subject matter. The context of the policy, at least such parts as are contractual, may always be looked to for a proper construction of what was in the minds of the parties at the time they entered into the contract. All its words, parts, and provisions must be construed together as one entire contract. All of the terms and conditions of each part should be read and interpreted together in the light of all the other parts. The intent of the contracting parties is to be ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the insurance contract as a whole. It is not permissible to lift one sentence from a policy and try to attach a meaning to that sentence standing alone." 2 G. Couch, Insurance, § 15.29 (2d ed. 1984).

The preamble of the certificate states that "[i]n consideration of the payment of the premium, and subject to the terms, conditions and limits of liability set forth herein . . . the Reinsurer [Constitution] does hereby reinsure the ceding company [Affiliated, the original insurer] . . . in respect of the Company's [Affiliated] policy(ies). . . ." Clause A of the certificate provides in relevant part that "[t]he liability of

the Reinsurer . . . shall follow that of the Company, subject in all respects to all of the terms, conditions and limits of the Company's policy except when otherwise specifically provided herein . . . ." Read together, the preamble and clause A specify that the certificate is a contract of reinsurance and that the reinsurer is only assuming those risks specifically provided for in the reassured's policy with its insured. In effect, the two sections spell out clearly in the certificate the essence of reinsurance described by this court in *Friend Bros. v. Seaboard Sur. Co.*, 316 Mass. 639 (1944): Reinsurance is "an agreement to indemnify the assured, partially or altogether, against a risk assumed by . . . [it] in a policy issued to a third party." *Id.* at 642, quoting *Royal Ins. Co.* v. *Vanderbilt Ins. Co.*, 102 Tenn. 264, 267 (1899).

Thus, the meaning of the words in clause D of the certificate, "[i]n addition thereto, the Reinsurer shall pay its proportion of expenses . . . incurred by the Company [Affiliated] in the investigation and settlement of claims or suits," is clear. Those words unambiguously refer to expenses incurred by Affiliated in the investigation and settlement of Campbell's risks that Affiliated insured and Constitution reinsured. The expenses referred to are Affiliated's expenses incurred in the discharge of obligations it undertook in its policy issued to Campbell. To say, as the court appears to say, that the "in addition to" provision in clause D may require Constitution to pay Affiliated's legal expenses[1] incurred in successfully maintaining its position that, as to the EEOC claim against Campbell, Affiliated's original policy issued to Campbell did not impose any obligations or risks on Affiliated, is to isolate that single provision from its reinsurance context. As to the EEOC claim, Affiliated's position, sustained by the New Jersey Supreme Court, was that it was not an insurer. Therefore, as to that claim, Constitution was not a reinsurer and it is abundantly clear from a reading of the entire facultative reinsurance certificate that Constitu-

---

[1]Expenses incurred in litigation concerning coverage cannot reasonably be considered to be expenses incurred in "investigation and settlement."

tion's obligations did not extend beyond reinsurance. "It is not permissible to lift one sentence from a policy and try to attach a meaning to that sentence standing alone." Couch, Insurance, *supra* at § 15.29.

Since, as the Superior Court judge reasoned, the policy provision at issue is not uncertain or equivocal as applied to the subject matter,[2] no extrinsic evidence is appropriate. The judgment therefore should be affirmed.

The Superior Court judge rightly concluded that the Nineteenth Century cases relied on by Affiliated do not support its contention that its legal expenses in connection with resisting Campbell's coverage claim are covered by the reinsurance certificate. The court seems to agree, *ante* at 843 n.8, but says that "[t]here is support for Affiliated's position among the insurance treatises," *ante* at 842, and purports to set forth that support in the margin. *Ante* at 842 n.6. The named treatises do not support Affiliated's position. Indeed, they do not appear to address the issues presented by this case. In addition, they suffer from the same defect as do the cases relied on by Affiliated and rejected by the Superior Court judge; "the specific contract language relied on by the courts, if any, is not recited or discussed in any meaningful way." See *ante* at 843 n.8. Furthermore, the treatises appear to rely in substantial measure on the very cases that the judge, and seemingly the court, have found wanting.

The Superior Court judge's analysis and ruling were right. I would affirm the judgment.

---

[2] As the court points out, *ante* at 846, "At the hearing, although the parties submitted extrinsic evidence of Constitution's practice, neither party offered evidence of the pertinent custom and usage." It also appears that Affiliated has not argued on appeal that the Superior Court judge should have considered such evidence, and Affiliated does not ask this court to remand the case for such consideration to be given.