Borenstein, J.
The defendant, Fifth Avenue Limousine Service, Inc. (“Fifth Avenue”), has moved for summary judgment pursuant to Mass.R.Civ.P. 56 seeking both the allowance of its counterclaims and the dismissal of the complaint filed by the plaintiff, Budget Rent A Car Systems, Inc. (“Budget”). In filing its complaint, Budget sought to recover for Fifth Avenue’s alleged breach of a vehicle rental contract between the parties. In response to the instant motion, Budget filed a consolidated opposition to defendant’s motion for summary judgment and a cross-motion for summary judgment. A hearing on these motions was held before me on February 7, 1996. For the reasons set forth below, Fifth Avenue’s motion for summary judgment is allowed with the exception of Count III, which is denied.
BACKGROUND
The facts relied upon in reaching my determination are undisputed. With its principal place of business located at 484 Prospect Avenue, Revere, Massachusetts, Fifth Avenue is a Massachusetts corporation servicing the greater New England area and is a member of the Dav El Livery Network. In addition to Fifth Avenue, the Dav El Network consists of several corporations including Dav El Services of New York.
Although it ordinarily utilizes company-owned vehicles to provide its service, as needs have arisen over the past ten years, Fifth Avenue has rented vehicles from the Budget office at 15 West Park Drive, Westborough, Massachusetts. At the hearing before me counsel for Fifth Avenue contended and counsel for Budget did not dispute a history between the parties.
Fifth Avenue employs its own limousine drivers and maintains franchise arrangements with other drivers. Pursuant to these arrangements, franchise drivers had express permission from Fifth Avenue to operate vehicles rented from Budget. Frances J. Romano of Staten Island, New York was a franchise driver for Fifth Avenue while employed by the Dav El Services of New York.
On November 2, 1993, while accompanied by Romano, Gene Porzio, Fifth Avenue’s fleet manager, executed a rental agreement with Budget for the rental of a town car. While executing the rental agreement, Porzio accepted the Loss Damage Waiver. The Loss Damage Waiver states that in return for a daily fee of $6.66 paid by Fifth Avenue, Budget would assume all liability for any damage to or loss of the vehicle except as provided in paragraph eight of the agreement.
Paragraph eight states in pertinent part that if a renter or any authorized driver accepts the Loss Damage Waiver but violates a use restriction in paragraph five, the renter will be responsible for the full value . .. of such loss of or damage to the vehicle. Paragraph five provides that the renter and authorized driver agree that the vehicle will not be used or operated by anyone who is an unauthorized driver.
Paragraph four, on the reverse side of the agreement, defines authorized drivers as follows:
the renter and the following validly licensed individuals with the renter’s permission (“Authorized Drivers”) may operate the vehicle: Renter’s spouse, employer or coworkers if engaged in business related activities with Renter; persons parking the vehicle at commercial establishments; or persons during an emergency situation. All other additional drivers must appear at the time of rental and be named on the face of this agreement. All authorized drivers must have a valid driver’s license and be at least 21 years old . . .
On November 9, 1993, while operating the town car rented by Porzio on South Broad Street in Elizabeth, New Jersey at 12:45 a.m., Romano collided with a truck operated by Gene Timmons of Millsboro, Delaware. On May 9,1994 Budget filed a complaint against Fifth Avenue. In filing that complaint, Budget sought to recover for the damage to the town car alleging that at the time of the collision Romano was not an authorized driver as defined by paragraph four of the rental agreement. In their complaint Budget asserts that by allowing Romano to operate the vehicle, Fifth Avenue violated the use restriction clause of paragraph five of the rental agreement thereby breaching the contract and entitling Budget to recovery. In the June 17th counterclaim, Fifth Avenue alleged that Romano, as a franchise driver, was a coworker, and thus, an authorized driver as defined by the agreement. Fifth Avenue *665 further alleged that Budget’s failure to accept liability constitutes a breach of the rental agreement.
In filing the instant motion, Fifth Avenue seeks summary judgment on its counterclaims against Budget for declaratory relief, breach of contract and violation of G.L.c. 93A, §§2, 11, as well as the dismissal of Budget’s complaint. In addition, while opposing the instant motion, Budget has filed a cross-motion for summary judgment on its complaint.
DISCUSSION
This Court grants summary judgment where there are no issues of material fact in dispute and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c); 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who bears the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Establishing the absence of a triable issue requires the nonmoving party to respond by alleging specific facts demonstrating the existence of a genuine fact. Pederson v. Time, Inc., supra at 17.
The interpretation of a written contract is generally a question of law, not fact. Lexington Insurance Co. v. All Regions Chemical Labs, Inc., 419 Mass. 712, 713 (1995), citing Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992). More precisely, “the construction of a written contract which is plain in its terms and free from ambiguity presents a question of law for the court.” Hiller v. Submarine Signal Co., 325 Mass. 546, 549-50 (1950). See also, Freelander v. G&K Realty Corp., 357 Mass. 512, 516 (1970); Sherman v. Employer’s Liability Assurance Corp., Ltd., 343 Mass. 354, 356 (1961).
When examining the construction of contracts, “written words that are plain and free from ambiguity must be construed in usual and ordinary sense.” Ober v. National Casualty Co., 318 Mass. 27, 30 (1945) (citations omitted). Further, contracts “should be construed in such a way that no word or phrase is made meaningless by interpreting another word or phrase because the interpretation should favor a valid and enforceable contract or lease rather than one of no force and effect.” Lexington, 419 Mass. at 713. Contracts must be construed in accordance with “(¡Justice, common sense, and the probable intention of the parties.” Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701 (1964).
It is a fundamental principal of contract law that when a contract provision is plain and free from ambiguity, “(t]he parties are bound by the plain terms of their contract.” Hiller, 325 Mass. at 550; Sherman, 333 Mass. at 356. However, when a phrase within an agreement takes on a variety of meanings, and the agreement is subject to a number of interpretations, the court may look to the past conduct and practices of the parties to determine the probable meaning of the ambiguous phrase. Affiliated F.M. Ins. Co. v. Constitution Reinsurance Corp., 416 Mass. 839, 840 (1994) (Affiliated). Further, if the probable meaning cannot be ascertained with the assistance of the past conduct and practices of the parties, the agreement must be construed against the party who drafted it. Affiliated, 416 Mass. at 844-45; Benalcazar v. Goldsmith, 400 Mass. 111, 114 (1987); Merrimack Valley National Bank v. Baird, 372 Mass. 721, 724 (1977).
The liability for the breach of the instant rental agreement turns upon whether, at the time of the collision, Romano was an authorized driver within the meaning of the agreement. In its pleadings and at the hearing before me, Budget asserted that Romano was not an employee of Fifth Avenue, and therefore, not an authorized driver of the town car. However, Budget’s assertion fails to consider the remaining conditions of the agreement under which an individual may be considered an authorized driver. According to the rules of contract interpretation, these remaining conditions must be considered.
The agreement expressly provides that, in addition to having a valid driver’s license and being at least twenty one years of age, a coworker who is engaged in business activity with the renter and has received permission from the renter to operate the rented vehicle is an authorized driver. At the hearing before me, over objection from counsel for Budget, Fifth Avenue contended that Romano was a franchise driver, and as such, a coworker as defined by the agreement. Thus, in order to determine which of the instant parties breached the rental agreement, I need only determine whether at the time of the collision Romano was a coworker of Fifth Avenue.
The rental agreement does not define the term coworker. In its usual and ordinary sense, as urged by Fifth Avenue, the term coworker could be defined to include a franchise driver as an individual who, with the express permission of Fifth Avenue, was “engaged in business related activities with [the] Renter.” See para. 4, Rental Agreement. However, as argued by counsel for Budget, the term coworker could usually and ordinarily be defined as including only individuals *666 who are employees of the Renter. Therefore, as the term coworker is “a phrase [that] takes on a variety of meanings and the agreement is subject to [two] interpretations, the court may look to the past conduct and practices of the parties to determine the probable meaning of the ambiguous phrase.” Affiliated, 416 Mass. at 840.
The past conduct of the parties includes a ten-year history of rentals from which one might reasonably conclude that Budget knew or should have known that Fifth Avenue allowed franchise drivers to operate rented vehicles. An ambiguity in a written contract is to be construed against the drafting party. Affiliated, 416 Mass. at 844-45; Benalcazar v. Goldsmith, 400 Mass. 11, 114 (1987); Merrimack Valley National Bank v. Baird, 372 Mass. 721, 724 (1977). Therefore, any ambiguous terms within the instant rental agreement must be construed against Budget, as it was the drafting party.
As a matter of law, I find coworker to be an ambiguous term of the rental agreement requiring my construing it against Budget. See Affiliated, Benalcazar, Merrimack, supra. Thus, based upon the pleadings and the hearing before me, I find that Romano was a coworker within the meaning of the rental agreement. Further, as Romano was both a coworker and an authorized driver within the meaning of the rental agreement, Budget breached the agreement with Fifth Avenue by denying liability for the damages incurred as a result of Romano’s collision on November 9, 1993.
ORDER
For the foregoing reasons, it is hereby ORDERED that Fifth Avenue’s motion for summary judgment is ALLOWED with the exception of Count III which is DENIED. The pleadings and hearing before me do not support a ruling as a matter of law that Budget violated G.L.c. 93A, §§2, 11.