UNITED FIRE & CASUALTY COMPA-
NY; Guaranty National Insurance
Company; Sphere Drake Insurance
Public Limited Company; Terra Nova
Insurance Company Limited; River
Thames Insurance Company Limited;
Uni Storebrand Insurance Company
(U.S.) Limited; and Axa Reinsurance
Company, Plaintiffs,

v.

ARKWRIGHT MUTUAL INSURANCE
COMPANY, Defendant.

No. 97 Civ. 4102(RWS).

United States District Court,
S.D. New York.

June 30, 1999.

Clausen Miller P.C., Chicago, IL (Matthew S. Ponzi, Thomas B. Orlando, of counsel), Clausen Miller P.C., New York City (Andrew M. Laskin, Andrew C. Jacobson, of counsel), for plaintiff.

Laurence M. Shanahan, New York City, Newman & Company, P.C., New York City (Laurie A. Kamaiko, of counsel), for defendant, Arkwright Mutual Insurance Company.

## OPINION

SWEET, District Judge.

Plaintiffs United Fire & Casualty Company, Guaranty National Insurance Company; Sphere Drake Insurance Public Limited Company, Terra Nova Insurance Company Limited, River Thames Insurance Company Limited, and Uni Storebrand Insurance Company (U.K.) Limited (the "Western Re Reinsurers"), and Axa Reinsurance Company (hereinafter "Axa Re" and collectively the "Plaintiffs"), have moved under Rule 56, Fed.R.Civ.P. for summary judgment to declare that the Certificates of Facultative Insurance do not reinsure the Extended Period of Indemnity Endorsement contained in the insurance policy issued by defendant Arkwright Mutual Insurance Company ("Arkwright") to the Warnaco Group Inc. ("Warnaco") and that the liability of the Plaintiffs is limited to $1,036,501. Upon the following findings of fact and conclusions of law, the Plaintiffs' motion is granted.

### The Issue

Here the earthquake damages suffered by Warnaco, Arkwright's insured, require a resolution of the meaning and effect of the documents and practices governing the reinsurance obtained by Arkwright from the Plaintiffs as to whether or not Business Interruption endorsement to a policy ("BI") includes an Extended Period of Indorsement provision ("EPI"). Because there are no material facts at issue since the specific must control over the general, and because the duty of utmost good faith falls principally upon the ceding insurer, summary judgment in favor of the Plaintiffs, though not easily arrived at, is appropriate. Despite the difficulty of the issues, skilled counsel for both sides have made the task of resolution if not easy, at least comprehensible.

*Prior Proceedings*

This action was commenced on June 4, 1997 by the filing of a complaint by the Plaintiffs setting forth two causes of action, the first seeking rescission of the Certificates of Facultative Reinsurance which they had issued on the grounds that Arkwright obtained its reinsurance through the misrepresentation of material facts, and the second seeking a declaratory judgment that the Extended Period of Indemnity Endorsement contained in the Arkwright policy of insurance issued to Warnaco was not reinsured by Plaintiffs and that the Plaintiffs are not liable under their Certificates of Facultative Reinsurance. An answer was filed and discovery was taken.

On January 22, 1999, the Plaintiffs filed the instant motion seeking summary judgment on their second cause of action and a declaration that their liability is limited to $1,036,501. The motion was marked fully submitted on March 24, 1999.

*FINDINGS OF FACT*

The facts found below are based upon the statements submitted by the parties in accordance with Rule 56.1 of the Civil Rules of the Rules of the United States District Courts for the Southern and Eastern Districts and are not in dispute except as noted.

*The Participants*

Warnaco is a manufacturer and distributor of apparel. Warnaco's Olga Division manufactures and distributes women's undergarments. Its Olga Division's finishing and distribution center was located in Sylmar, California.

Arkwright issued to Warnaco a first-party property damage and business interruption insurance policy, No. 06020044, effective January 18, 1993 to January 18, 1996, covering Warnaco's property throughout the United States and Mexico, including its Sylmar, California location ("the Warnaco Policy").

Balis & Co., Inc. ("Balis") is a reinsurance intermediary whose function is to place facultative reinsurance with reinsurers on behalf of Arkwright. It placed facultative reinsurance for the Warnaco Policy with Western Re and Axe Re.

Axa Re is a reinsurer who issued to Arkwright a certificate of facultative reinsurance, No. P11260/93, effective March 1, 1993 to March 1, 1994, reinsuring portions of the Warnaco Policy (the "Axa Re Certificate of Facultative Reinsurance"). The Western Re Reinsurers, are reinsurers who issued to Arkwright a certificate of facultative reinsurance, No. WRE113435, effective March 1, 1993 to March 1, 1994, reinsuring portions of the Warnaco Policy (the "Western Re Certificate of Facultative Reinsurance").

Western Re/Managers ("Western Re") is the managing general agent for the Western Re Reinsurers for the purpose of underwriting facultative reinsurance and issuing certificates of facultative reinsurance on their behalf. Western Re issued the Western Re Certificate of Facultative Reinsurance on behalf of the Western Reinsurers.

*The Warnaco Policy*

The Warnaco Policy is an all-risk property insurance policy insuring property owned or operated by Warnaco at scheduled locations throughout the United States and Mexico. The Warnaco Policy covers property damage and business interruption loss caused by any insured peril, including fire, windstorm, vandalism, earthquake and flood.

Arkwright standard policy Form No. 3200—the Business Interruption Endorsement ("BI"), provided the basic business interruption coverage in the Warnaco Policy and covers the policyholder for its business interruption loss sustained during the "period of interruption," which is defined as the time necessary to repair or replace property damaged by an insured peril.

Arkwright standard policy Form No. 3213, the Extended Period of Indemnity

Endorsement ("EPI"), was included in the Warnaco Policy and provided extended business interruption coverage.

EPI covers remote business interruption losses and losses of market share occurring beyond the basic period of interruption, losses which are not insured under Form No. 3200 of the Warnaco Policy. The EPI endorsement extended the period of interruption in the Warnaco Policy for an additional 270 consecutive days beyond the time afforded by the basic business interruption coverage in form No. 3200.

Arkwright charged Warnaco an additional premium of $51,793 for adding the EPI endorsement to the Warnaco Policy.

### The Warnaco Earthquake Loss

The Northridge, California earthquake of January 17, 1994 damaged Warnaco's Sylmar, California location and as a result Warnaco sustained business interruption losses which were covered by the Warnaco Policy. The business interruption loss sustained by Warnaco under Arkwright standard policy Form No. 3200, the Business Interruption Endorsement was $12,-644,243. This represents the amount of business interruption loss sustained by Warnaco during the seven months between the date of the earthquake (January 17, 1994) and the time that the Sylmar facility was ready to be reoccupied (July 1994). Warnaco's business interruption loss sustained under Arkwright Form No. 3213, the Extended Period of Indemnity Endorsement was $5,726,998. This represents the amount of business interruption loss sustained by Warnaco in the 270 days subsequent to July 1994, ending in April 1994 and resulted primarily from the difficulty in recategorizing stock and the consequent inability to fill orders and a resultant loss of market share.

The costs of the move, relocation, reestablishment of Warnaco's operations, loss of business, and lost profits, comprise the business interruption loss known as the "Warnaco Loss."

The extent of the Warnaco loss was unexpected. It took two major accounting firms (one hired by Warnaco and one by Arkwright), a team of adjusters, and numerous Warnaco and Arkwright staff over two years to calculate the extent of the business interruption loss sustained by Warnaco.

In recognition that the loss, although unforeseen, was covered by the Warnaco policy, Arkwright adjusted the loss and negotiated a settlement with Warnaco in which the loss was agreed to be $18,371,-241, the deductible was negotiated to be $5,571,241, and Arkwright agreed to pay Warnaco $12,800,000. Certain of the Plaintiffs paid interim payments without objection prior to the time the extent of the Warnaco loss was known.

### The Reinsurance Claim

By July 12, 1995, the Plaintiffs were provided with notice of a potential claim by Arkwright for payment of their share of the Warnaco Loss resulting from the Northridge earthquake.

By July 20, 1995, Plaintiffs had received loss estimates of the Warnaco Loss from Arkwright's adjusters, which noted the existence of the Warnaco Policy's extended period of indemnity for business interruption losses, and the potential for a loss within that period. They made no objection or statement that they did not reinsure EPI.

In September 1995, Plaintiffs received copies of loss adjusters' reports prepared a year earlier which specified that Warnaco's business interruption loss had an EPI component with a negative balance of $(570,129). By September 27, 1995, the Plaintiffs were sent proofs of loss and asked to pay their share of interim payments made by Arkwright to Warnaco for the business interruption loss, including its EPI component.

On October 19, 1995, the Arkwright report showed an estimated EPI loss of $2 million and in November 1995, Western Re approved the bills for payment, and Plain-

tiffs agreed to pay them. Western Re also recommended, through its claims agent, that the Western Re Plaintiffs reserve for their share of the full amount of potential loss to their layer, then $7 million.

In December 1995, as the loss predictions approached $12 million ($7 million to the reinsurance layer in which Plaintiffs provided 50% of the reinsurance), the Plaintiffs for the first time sent a reservation of rights letter raising objections to the billings for losses during the EPI.

Under their certificates of Facultative Reinsurance in effect at the time of the earthquake, the Western Re Reinsurers and Axa Re collectively reinsured $5 million part of $10 million of reinsured losses in excess of $5 million.

Arkwright made claim to the Plaintiffs under the Certificates of Facultative Reinsurance for their alleged 50 percent share of Arkwright's $12.8 million payment to Warnaco in excess of $5 million (*i.e.* 50 percent of $7.8 million, or $3.9 million), which payment includes compensation to Warnaco for losses sustained under the Extended Period of Indemnity Endorsement.

### The Practice of Issuing Facultative Reinsurance

During the course of dealing among Arkwright, Balis, Western Re and Axa Re, the term "business interruption" or "BI" refers to the Arkwright standard policy form which provided the basic business interruption coverage. When seeking to place facultative reinsurance, Arkwright advises Balis of the specific coverages contained in the policies of insurance for which it is seeking facultative reinsurance, including when it seeks reinsurance of EPI.

Balis, through its submissions, then advises the potential reinsurers of the terms of the proposed facultative reinsurance, including, as a general practice, the specific coverages contained in the policies of insurance for which Arkwright is seeking facultative reinsurance. The practice var-

ied from risk to risk. When reinsurance has been bound, Balis confirms the reinsurance through its facultative cover notes, which include the specific coverages reinsured. Balis expressly confirms reinsurance of EPI in its facultative cover notes when such reinsurance has been placed.

When they have agreed to reinsure EPI, the Plaintiffs, as a general practice, expressly acknowledge their reinsurance of EPI in their certificates of facultative reinsurance.

Throughout the history of the facultative reinsurance relating to the Warnaco Policy (as is customary on all of the reinsurance placements between these parties), the communications exchanged between Arkwright and the Plaintiffs typically consisted of: (1) a submission to the Plaintiffs; (2) a formal request to bind reinsurance by Arkwright's agent, Balis; (3) the Plaintiffs' binders of reinsurance; (4) Balis' issuance of facultative cover notes confirming the placement of reinsurance; and (5) the Plaintiffs' issuance of certificates of facultative reinsurance.

### The 1989 Warnaco Facultative Reinsurance

In 1989, Arkwright first sought facultative reinsurance for the California locations insured under the Warnaco Policy, but only for the perils of earthquake and flood. Prior to 1989, Arkwright did not provide earthquake insurance to Warnaco and, therefore, had no need for earthquake reinsurance. Western Re agreed to bind reinsurance according to these terms and issues a certificate of facultative reinsurance. None of the documents associated with the placement of this reinsurance, including Balis' February 10, 1989 submission, Western Re's February 28, 1989 binder, Balis' March 16, 1989 facultative cover notes, or Western Re's May 25, 1989 certificate of facultative reinsurance, made any reference to EPI.

On March 1, 1990, Western Re renewed its certificate of facultative reinsurance, and Axa Re issued its first certificate of

facultative reinsurance, for the California locations insured under the Warnaco Policy for the perils of earthquake and flood. (Western Re and Axa Re shared participation on the same layer of reinsurance). On March 1, 1991 and 1992, Western Re and Axa Re renewed their certificates of facultative reinsurance for these portions of the Warnaco Policy. Neither the submission, requests for renewals, binders of reinsurance or facultative cover notes associated with these renewals, nor the certificates of facultative reinsurance, made any reference to EPI.

The following year, on February 22, 1993, Balis provided Western Re and Axa Re with a submission on behalf of Arkwright for the renewal of the facultative reinsurance for the California locations insured under the Warnaco Policy for the perils of earthquake and flood, the facultative reinsurance at issue here. Arkwright expressly requested reinsurance of the following specific coverages contained in the Warnaco Policy: earth movement/earthquake, flood, automatic coverage, errors and omission, floater locations, service interruption, contingent business interruption, and extra expense. Its submission did not make any reference to EPI.

On February 26, 1993, Balis requested Western Re and Axa Re to renew their facultative reinsurance of the Warnaco Policy for the period March 1, 1993 to March 1, 1994. The request for renewal did not make any reference to EPI.

On March 1, 1993, Western Re and Axa Re agreed to bind the renewal of the facultative reinsurance for the California locations insured under the Warnaco Policy for the perils of earthquake and flood for the period March 1, 1993 to March 1, 1994. The binders did not make any reference to EPI.

On March 10, 1993, Balis issued its facultative cover notes confirming the renewal of the facultative reinsurance for the California locations insured under the Warnaco Policy for the perils of earthquake and flood. The facultative cover notes did not make any reference to EPI. The facultative cover notes identify the coverages as "PD & BI as per original policy."

On April 28 and 19, 1993, Western Re and Axa Re, respectively, issued their Certificates of Facultative Reinsurance. The Certificates do not make any reference to EPI. The Certificates of Facultative Reinsurance identify the coverages as, in the case of Axa Re, "property damage, business interruption," and in the case of Western Re, "PD & BI."

Plaintiffs' Certificates of Facultative Reinsurance, issued on their own forms, provide that their reinsurance follows the terms of the original (reinsured) policy (the Warnaco Policy), except as to terms specifically excluded by the Certificate.

### Axa Re Reinsurance Certificate P11260/93

1. The liability of AXA Reinsurance Company (herein referred to as the "Reinsurer") shall follow that of the Company and *except as otherwise provided by this Certificate* or endorsement hereto shall be subject to the terms and conditions of the Company's policy ... (emphasis added).

### Western Re Plaintiff's Reinsurance Certificate WRE 113435

This certificate is an Agreement of Reinsurance under which the Reinsurer agrees to indemnify the Company [Arkwright] with respect to its insurance liability assumed under the policy set forth [on] the front of this Certificate subject to the following terms and conditions:

A. **APPLICATION OF LIABILITY.** The liability of the Reinsurer shall follow the terms and conditions of the Company's policy furnished to the Reinsurer at the effective date of the Reinsurance Certificate, *unless otherwise specifically provided herein* by endorsement made a par-

ty of this certificate ... (emphasis added).

Both the Western Re and Axa Re reinsurance certificates contain "following form" clauses as found above, that is, that the liability of the reinsurer will be congruent with that of insurer absent a specific exemption.

### The Course of Performance

On February 25, 1995, Balis provided Western Re and Axa Re with a submission on behalf of Arkwright for the placement of facultative reinsurance for the California locations insured under the Warnaco Policy for the perils of earthquake and flood for March 1, 1995, which Western Re and Axa Re agreed to bind. Neither Balis' February 3, 1995 submission, Balis' February 25, 1995 request for renewal, Western Re's and Axa Re's respective March 1 and February 28, 1995 binders, nor Balis' March 12, 1995 facultative cover notes made any reference to EPI

On March 22, 1995, Arkwright sent a memorandum to Balis stating that "looking over the cover notes for Warnaco, Inc. for Flood and EQ, we don't see Extended Period of Indemnity which is 270 days."

On March 23, 1995, Kenneth L. Perkins ("Perkins") of Balis responded to Arkwright:

> ... I have reviewed the file from 1989, and do not find where this coverage was ever requested. I will approach the reinsurers and request this coverage be added effective 3/1/95....

And Balis advised Western Re and Axa Re that "coverage for 270 days extended period of indemnity should have been included in this 3/1/95 renewal."

On May 30, and June 26, 1995, before first receiving notice of a potential reinsurance claim related to Warnaco's earthquake loss, Western Re and Axa Re, respectively, issued their certificates of property facultative reinsurance, effective March 1, 1995 to March 1, 1996, reinsuring the California locations insured under the Warnaco Policy for the perils of earthquake and flood. The certificates of property facultative reinsurance did not make any reference to EPI, nor did Balis ever amend its facultative cover notes to reflect any reinsurance of EPI.

### The Accounting

The Plaintiffs concede liability to Arkwright (exclusive of loss adjustment expenses and without prejudice to Plaintiffs' right to rescind the Certificates of Facultative Reinsurance under their first cause of action) of $1,036,501, determined as follows:

| | |
|---|---|
| Total business interruption loss | $18,371,241 |
| Less non-reinsured extended period of indemnity loss | 5,726,998 |
| Less deductible | 5,571,241 |
| Less reinsurance attachment point | 5,000,000 |
| Net loss subject to reinsurance | 2,073,002 |
| Plaintiffs' 50 percent share | 1,036,501 |

## CONCLUSIONS OF LAW

### Summary Judgment Is Appropriate

A motion for summary judgment may be granted only when there is no issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ. P.; *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991). If, on the other hand, a reasonable finder of fact could return a verdict for the nonmoving party, there is a genuine factual dispute and summary judgment should not be granted. *See Zeevi v. Union Bank of Switzerland,* No. 89 Civ. 4637, 1992 WL 8347, *4 (S.D.N.Y. Jan. 29, 1992). "[T]he trial court's task at the summary judgment stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to

deciding them." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219 (2d Cir. 1994).

### The Facultative Insurance Certificates Are Controlling

Reinsurance is a means by which insurers allocate their risk. It is the insurance of one insurer, in this instance, Arkwright, by another insurer, the Plaintiffs through which the reinsured is indemnified for loss under insurance policies it has issued. There are two basic types of reinsurance policies—facultative and treaty. Treaty reinsurance covers specified classes of insurance policies issued by the reinsured. The Facultative reinsurance at issue here involves the offer of all or a portion of a particular risk to one or more potential reinsurers, who are then free to accept or reject the risk in whole or in part. *See Unigard Security Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049, 1053–54 (2d Cir.1993); *Sumitomo Marine & Fire Ins. Co. v. Cologne Reins. Co. of Amer.*, 75 N.Y.2d 295, 301, 552 N.Y.S.2d 891, 894, 552 N.E.2d 139, 142 (N.Y.1990).

The parties agree that the Warnaco Policy provided EPI coverage, but the issue is whether the Plaintiffs accepted that portion of the Warnaco risk. According to the Plaintiffs, the failure to include specific reference to EPI in the Balis bids, its facultative certificates, and the facultative certificates of the Plaintiffs bar their liability. Arkwright takes the position that BI included EPI and that the Plaintiffs are required to "follow the form."

■ To resolve this dispute, it is appropriate to consider the Certificates of Facultative Reinsurance, the reinsurance transaction itself, and the course of dealing established between the parties, including the events of 1995. *See generally Unigard*, 4 F.3d 1049; *Sumitomo*, 75 N.Y.2d 295, 552 N.Y.S.2d 891, 552 N.E.2d 139; *Affiliated FM Ins. Co. v. Constitution Reins. Corp.*, 416 Mass. 839, 626 N.E.2d 878 (1994); *Arkwright–Boston Manufac-*

*turing Mutual Ins. Co. v. Calvert Fire Ins. Co.*, 1987 WL 14466 (S.D.N.Y.1987).

As set forth in the findings above, it is undisputed that the Certificates of Facultative Reinsurance are not coextensive to the Warnaco Policy. The Warnaco Policy is an all-risk property insurance policy covering property owned or operated by Warnaco at scheduled locations throughout the United States and Mexico covering property damage and business interruption loss caused by any insured peril, including fire, windstorm, vandalism, earthquake and flood. Prior to 1989, Arkwright did not provide earthquake insurance to Warnaco, and, therefore, had no need for earthquake reinsurance. Since 1989, Arkwright, having issued earthquake coverage, sought facultative reinsurance for only the California locations insured under the Warnaco Policy and only for the perils of earthquake and flood.

In 1989, Balis, as Arkwright's agent, approached Western Re for the placement of facultative reinsurance for only the California locations insured under the Warnaco Policy and only for the perils of earthquake and flood. Western Re agreed to bind reinsurance according to these terms on behalf of its reinsurers for each year from 1989 to 1993 and issued certificates of facultative reinsurance annually. Similarly, Balis approached Axa Re in 1990 for the placement of facultative reinsurance for only the California locations insured under the Warnaco Policy and only for the periods of earthquake and flood. Likewise, Axa Re agreed to bind reinsurance according to these terms of each year from 1990 to 1993 and issued certificates of facultative reinsurance annually.

Western Re's Certificate of Facultative Reinsurance, issued on behalf of all Plaintiffs except Axa Re, expressly reinsures the coverages of "PD & BI." Similarly, Axa Re's Certificate of Facultative Reinsurance expressly covers "property damage, business interruption." According to Arkwright, the EPI coverage provided under the Warnaco Policy is encompassed

within the terms "BI" and "business interruption" as used on the Certificates of Facultative Reinsurance.

The Warnaco Policy is a compilation of various separate and distinct Arkwright standard policy forms, including Form No. 3200, the Business Interruption ("BI") Endorsement, and Form No. 3213, the Extended Period of Indemnity Endorsement. As found above, the BI endorsement covers the policyholder only for loss of business income directly resulting from damage to property by an insured peril, and only during the time it takes to repair or replace the damaged property (the "period of interruption"). The EPI endorsement, for which an additional premium was charged, extended the time during which Warnaco is compensated for its loss but it also covers remote or indirect business interruption losses, such as losses of market share, which are not insured under the BI endorsement.

Because facultative certificates do not necessarily constitute the entire agreement among the parties to a reinsurance transaction, courts have deemed it beneficial, and permissible, to look to the communications exchanged between the parties to a reinsurance contract in order to determine the nature of the actual arrangement among them. *See generally Sumitomo*, 75 N.Y.2d 295, 552 N.Y.S.2d 891, 552 N.E.2d 139; *Tokio Marine & Fire Ins. Co., Ltd. v. American Centennial Ins. Co.*, 1997 WL 538823 (S.D.N.Y. Sept.2, 1997); *Ins. Co. of Ireland, Ltd. v. Mead Reins. Corp.*, 1994 WL 605987 (S.D.N.Y. Nov. 4, 1994). In fact, the communications exchanged between the parties can comprise a binding agreement such that the issuance of a formal certificate of reinsurance is technically unnecessary. *Id.* at *5.

From 1989 through 1993 when the Plaintiffs issued the Certificates of Facultative Reinsurance at issue, none of the documents exchanged between the parties, the submissions, requests, binders, facultative notes and certificates contained any reference to EPI.

However, on February 22, 1993, Balis provided Western Re and Axa Re with a submission for the renewal of Arkwright's facultative reinsurance and expressly requested reinsurance of the following specific coverages contained in the Warnaco Policy: floater locations, service interruption, contingent business interruption, and extra expense. The submission made no reference to EPI. On March 1, 1993, Western Re and Axa Re agreed to bind the renewal of the facultative reinsurance for the portions of the Warnaco Policy as described in Balis' February 22, 1993 submission. The binders do not make any reference to EPI. On March 10, 1993, after the facultative reinsurance was already in effect, Balis issued its facultative cover notes confirming the renewal of the Warnaco facultative reinsurance. The facultative cover notes do not make any reference to EPI and identify the coverages as "PD & BI as per original policy."

■ When a contract is in any respect uncertain or equivocal in meaning, all the circumstances leading to its execution may be shown for the purpose of clarifying, but not of contradicting or changing its terms. *See Affiliated FM Ins. Co. v. Constitution Reins. Corp.*, 416 Mass. 839, 626 N.E.2d 878, 880 (1994). *See also Sumitomo*, 75 N.Y.2d 295, 552 N.Y.S.2d 891, 552 N.E.2d 139.

■ The 1993 events establish that when Arkwright sought reinsurance of a particular coverage afforded under the Warnaco Policy, it expressly requested the coverage, as in the case of service interruption coverage, contingent business interruption coverage and extra expense coverage.

■ In addition, the parties' course of performance of a contract is relevant to understanding the contract even if the contract is unambiguous. *See, e.g., Time Warner Cable of New York City v. City of New York*, 943 F.Supp. 1357, 1390 (S.D.N.Y.1996); *Sumitomo*, 75 N.Y.2d at

301, 552 N.Y.S.2d at 894, 552 N.E.2d at 142 (N.Y.1990); *Arkwright–Boston Manufacturing Mutual Ins. Co. v. Calvert Fire Ins. Co.*, 1987 WL 14466 (S.D.N.Y.1987). An interpretation of the contract in practice, prior to litigation, can constitute evidence of the parties' intent. *See Time Warner*, 943 F.Supp. at 1390.

Arkwright's March 23, 1995 request for reinsurance of EPI, its first such request, was limited to the Warnaco facultative reinsurance in effect for the period March 1, 1995 to March 1, 1996 and took place (1) after the reinsurance at issue in this lawsuit had expired; (2) before Arkwright notified Plaintiffs of any reinsurance claim arising from Warnaco's earthquake loss, and (3) prior to any dispute giving rise to this lawsuit. Arkwright's own interpretation of the reinsurance coverage prior to any dispute giving rise to litigation constitutes powerful evidence that the Certificates of Facultative Reinsurance are controlling and that the Plaintiffs did not reinsure EPI.

### The "Following Form" Clauses Are Not Controlling

Both the Western Re and Axa Re reinsurance certificates contain "following form" clauses as found above, that is, that the liability of the reinsurer will be congruent with that of insurer absent a specific exemption.

> A "following form" clause in a policy of reinsurance incorporates by reference all the terms and conditions of the reinsured policy, except to the extent that the reinsurance contract by its own terms specifically defines the scope of coverage differently, i.e., via an exclusion. [Citations omitted.] ...
>
> ... *the purpose of following form is to achieve concurrency between the reinsured contract and the policy of reinsurance,* thereby assuring the ceding company, that by purchasing reinsurance, it has covered the same risks by reinsurance that it has undertaken on behalf of the original insured under its own policy. (Emphasis added).

*Aetna Cas. and Sur. Co. v. Home Ins. Co.*, 882 F.Supp. 1328, 1345 (S.D.N.Y.1995); *see also North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1217 (3d Cir. 1995).

■ A reinsurer is presumed to follow the terms of the reinsured policy, absent express exclusions in the reinsurance contract.

> ... in a reinsurance relationship, concurrency of coverage is presumed in the absence of contrary language in the reinsurance contract.

*Aetna*, 882 F.Supp. at 1345 (*citing North River Ins. v. Philadelphia Reinsurance Corp.*, 831 F.Supp. 1132, 1143 (D.N.J. 1993)).

■ A reinsured owes its reinsurer a duty of utmost good faith. *Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd.*, 992 F.Supp. 278, 282 (S.D.N.Y.1998). The doctrine of utmost good faith imposes no duty of inquiry upon a reinsurer. *Id.* Rather, the burden is on the reinsured to volunteer all material facts. *Id.* The Plaintiffs were under no duty to request a copy of the Warnaco Policy, and did not.

■ Here, the Plaintiffs agree that they reinsured the peril of earthquake and the coverage of business interruption, and they follow all of the Warnaco Policy's terms and conditions with respect to the business interruption coverage pursuant to the "following form" clauses. However, EPI is not a term or condition of the business interruption coverage contained within the Warnaco Policy, but rather a separate and distinct endorsement to the Warnaco Policy.

Contrary to Arkwright's contention, EPI is not included as a term and condition of "BI." The "following form" clauses themselves contain the phrase "except as otherwise provided by the Certificate" in the case of Axa Re and in Western Re's certificate "unless specifically provided here by the endorsement made a part of this Certificate." The Certificates of Facultative

Reinsurance trump the "following form" clauses.

■ Facultative reinsurance contracts are not integrated agreements. It is generally recognized that the reinsurance agreement consists of the communications exchanged between the parties as well as the facultative reinsurance certificates. *See generally, Sumitomo,* 75 N.Y.2d 295, 552 N.Y.S.2d 891, 552 N.E.2d 139; *Tokio Marine,* 1997 WL 538823; *Ins. Co. of Ireland,* 1994 WL 605987. Because the Certificates of Facultative Reinsurance incorporate by reference portions of the Warnaco Policy, those portions constitute a part of the reinsurance agreement and the terms contained in the Certificates in the context must be examined in the light of the Warnaco Policy and the communications exchanged between Arkwright and the Plaintiffs.

Further the Plaintiffs reinsured Warnaco's "California locations only," and there is no exclusion of Warnaco's non-California locations in order to avoid liability for losses at such locations. The evidence establishes that the terms and conditions of the Facultative Certificates overcome the "following form" clauses.

### The Plaintiffs Have Not Waived Their Rights

■ The relationship of a reinsurer and a reinsured is often characterized as one of utmost good faith (*"uberrimae fidei"*). The duty of utmost good faith is a mutual one; it is an obligation of the reinsurer as well as of the cedent.

■ Utmost good faith also requires a reinsurer to indemnify its cedent for losses that are even arguably within the scope of the coverage reinsured, and not to refuse to pay merely because there may be another reasonable interpretation of the parties' obligations under which the reinsurer could avoid payment. *See Christiania General Ins. v. Great American Ins. Co.,* 979 F.2d 268, 280–81 (2d Cir.1992); *see also Unigard,* 4 F.3d 1049; *Mentor Insurance Co. (U.K.) Ltd. v. Brannkasse,* 996 F.2d 506 (2d Cir.1993); *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.,* 9 F.Supp.2d 49 (D.Mass.1998).

■ As found above, the Plaintiffs did not inform Arkwright they considered that their reinsurance did not cover EPI losses when Plaintiffs were advised at the March 1994 and March 1995 renewals of the earthquake nor at any time the next year when the losses became quantified, nor when the Plaintiffs approved Arkwright's bills for payment; and some of the Plaintiffs issued checks to Arkwright before asserting any reservation of rights. In effect, according to Arkwright, applying the doctrine of *uberrimae fidei,* the Plaintiffs are barred from asserting their present position.

Waiver is, of course, the intentional relinquishment of a known right. *See, e.g., Calocerinos & Spina Consulting Engineers, P.C. v. Prudential Reins. Co.,* 856 F.Supp. 775, 780 (W.D.N.Y.1994). The "right" at issue is the Plaintiffs' right to a judicial declaration that they did not reinsure EPI. In order for Plaintiffs to be in a position even to waive their right to seek such a declaration, they must first (1) have been presented with a reinsurance claim, and (2) have had knowledge that the reinsurance claim includes a request to pay a portion of Warnaco's EPI loss. The exercise of the duty to pay is utmost. However, the good faith is mutual in terms of disclosure and performance. The Plaintiffs were not provided notice of a reinsurance claim until July 1995, their first knowledge that Warnaco may have sustained an EPI loss was in September 1995, and the reports showed a negative balance. The October 19, 1995 report showed an estimated EPI loss of over $2 million and in December 1995 a reservation of rights letter was received by Arkwright from the Plaintiffs. A 60–day delay in reserving rights after the final claim was established that Warnaco sustained an EPI loss does not constitute waiver.

Doctrines of waiver and estoppel may not be invoked to extend coverage or to create coverage where none exists. *See, e.g., Atlantic Mut. Ins. Co. v. Balfour MacLaine International Ltd.,* 85 F.3d 68 (2d Cir.1996); *Frankart Distributors, Inc. v. Federal Ins. Co.,* 616 F.Supp. 589 (S.D.N.Y.1985); *Penske Truck Leasing Co., L.P. v. Home Ins. Co.,* 251 A.D.2d 478, 480, 674 N.Y.S.2d 400, 401 (N.Y.App.Div. 1998). Since the Plaintiffs have established that they never reinsured EPI in the first place, they have survived a defense of waiver.

### The Plaintiffs Calculation Of Their Liability Is Correct

Arkwright has argued that the deductible should be allocated between EPI and non-EPI. However, Plaintiffs' Certificates of Facultative Reinsurance are not excess of allocated deductible or excess of apportioned deductible or excess of pro rata deductible. They are simply excess of deductible.

Therefore, Plaintiffs' reinsurance is not triggered until (1) Warnaco has met its full deductible and (2) Arkwright has paid its $5 million non-reinsured limit of liability. Here that means Warnaco absorbs the first $5,571,241 of loss, which is the deductible; Arkwright pays its $5 million non-reinsured limit of liability; and finally the Plaintiffs pay their fifty percent share of the remaining $2,073,002 of reinsured non-EPI loss, or $1,036,501.

The calculated deductible is not dependent upon either the amount of the adjusted loss or the breakdown of the loss between EPI and non-EPI. Rather, it was calculated, as Arkwright has conceded, as ten percent "of the full annual time element value which would have been earned in the twelve month period following the occurrence by use of the facilities at the location where the physical damage occurred." Because Arkwright determined that the loss location, Warnaco's Sylmar facility, would have earned $55,712,410 in the twelve months following the earth-

quake, it calculated the deductible as $5,571,241. Because the Certificates of Facultative Reinsurance provide the reinsurance is "excess of deductible," the Plaintiffs are entitled to the full benefit of the deductible.

### *CONCLUSION*

Based on the facts and conclusions set forth above, the Plaintiffs' motion for summary judgment is granted declaring the amount of their liability excluding any liability for EPI.

Settle judgment on notice.

It is so ordered.